UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

STATE OF LOUISIANA, ET AL.

CIVIL ACTION

NO. 11-470-JJB

**RULING ON OBJECTION'S TO MAGISTRATE JUDGE'S ORDERS**

Before the Court are several objections to discovery rulings made by the magistrate judge. Specifically, defendants Thomas Schedler, in his official capacity as Louisiana Secretary of State; the Louisiana Department of Health and Hospitals ("DHH"); Bruce Greenstein, in his official capacity as Secretary of DHH; the Louisiana Department of Children and Family Services ("DCFS"); and Ruth Johnson, in her official capacity as Secretary of DCFS, each separately move to vacate or modify the magistrate judge's discovery rulings on three points: the number of interrogatories allowed, the number of requests for admission allowed, and the protective order entered. (*See* Docs. 64-68). The United States filed a consolidated opposition. (Doc. 70). Oral argument is unnecessary. The Court has jurisdiction under 28 U.S.C. § 1331.

I.

This case concerns Louisiana's alleged violations of the National Voter Registration Act of 1993 ("NVRA"), 42 U.S.C. § 1973gg *et seq.* Under NVRA, States are required to distribute to their citizens voter registration forms. States must also assist citizens in completing the forms and thereafter transmit them to the appropriate state election officials.

The magistrate judge in this case conducted a status conference on October 20, 2011. Because of the sensitive and personal nature of the public assistance and voter registration

1

documents at issue, and due to the parties' inability to agree on an appropriate protective order, the magistrate judge granted the United States' request for a protective order. (Doc. 61).

Another status conference was held on December 14, 2011, wherein the magistrate judge allowed the United States to propound 40 interrogatories on each defendant-entity but only permitted 40 joint interrogatories from the defendants because their aligned interests would present unduly cumulative discovery requests if not so limited. (Doc. 63, p. 3 (citing Fed. Rule Civ. P. 26(b)(2)). Likewise, the United States was allowed to propound 25 requests for admission on each defendant-entity, but defendants were permitted only 25 joint requests. (*Id.*). There are four defendant-entities in this suit: the State, the Secretary of State's office, DHH, and DCFS.

## II.

District courts review non-dispositive decisions made by magistrate judges under a clearly erroneous or contrary to law standard. Fed. Rule Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A).

A. Protective Order

Secretary Greenstein, DHH, Secretary Johnson, and DCFS argue that the protective order issued in this case is neither authorized under Rule 26 nor legally permissible under a host of state and federal privacy laws protecting confidential information from disclosure. (Docs. 65, 67). Secretary Schedler appeals only to preserve his ability to object to future discovery requests and otherwise protect sensitive information sought during discovery. (Doc. 64-1, p.4).

Fed. Rule Civ. P. 26(c) provides as follows:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . .

2

Defendants argue the lack of any commas setting off "or any person from whom discovery is sought" means that only parties or persons from whom discovery is sought may move for a protective order. Since the United States in this case is seeking to obtain discovery but is not the party from whom discovery is sought—at least with respect to the information subject to the protective order—defendants are correct that the text of this rule precludes the United States from moving for a protective order. This impression is confirmed by the second sentence quoted above. It clearly refers to the same party or person referenced in the first sentence, and it would be strange to include concerns about annoyance, embarrassment, oppression, or undue burden or expense for parties who are obtaining but not furnishing the discovery sought to be protected. Thus, on a plain textual reading of Rule 26(c), the United States cannot move for a protective order covering information it will obtain, but not furnish, via discovery.

But contrary to defendants' position, that does not end the matter. Aside from the specific discovery powers delineated in Rule 26(c), district courts have broad inherent powers to manage discovery. Some of these powers are recognized in other portions of the Federal Rules. For instance, Rule 26(b)(1) provides in part that the scope of discovery extends to "any nonprivileged matter that is relevant to any party's claim or defense . . . [and] [f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Regarding discovery of electronically stored information, which appears to be the predominant source of the information sought to be protected here, Rule 26(b)(2)(B) permits the court to "specify conditions for the discovery" and order discovery, notwithstanding objections of cost or inconvenience, if the party requesting discovery shows good cause. In short, Rule 26 mandates certain procedures to be followed by the parties and, in certain instances, presents specific limitations on the court's discovery powers, but it does not purport to set a ceiling for the

3

district court's exercise of its broad power to manage the case. The Court finds it proper to quote at length a passage from a Fifth Circuit opinion:

> For nearly as long as the federal courts have existed, it has been understood that certain implied powers must necessarily result to our courts of justice from the nature of their institution, powers which cannot be dispensed with in a court because they are necessary to the exercise of all others. The Constitution itself confers this authority upon all Article III courts as an incident to "The judicial Power." The inherent powers of the federal courts are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases. At the same time, however, these powers must be exercised with restraint and discretion. As we have said, inherent authority is not a broad reservoir of power, ready at an imperial hand, but a limited source; an implied power squeezed from the need to make the court function. In short, the inherent power springs from the well of necessity, and sparingly so.

*Natural Gas Pipeline Co. of America v. Energy Gathering, Inc.*, 2 F.3d 1397, 1406-07 (5th Cir. 1993) (internal citations and punctuation omitted). This case plainly presents such a scenario. The United States has brought a claim against the State to enforce federal law, but obtaining necessary evidence of this non-compliance rests in the hands of the State. Without a protective order, the United States would have no way of proving with specificity the NVRA non-compliance its statistical data suggests unless the discovery were compelled *without* a protective order, which would plainly violate myriad federal and state privacy regulations. Faced with this unpalatable scenario, the magistrate judge correctly concluded that the inherent power of this Court permits the issuance of a protective order. *See Natural Gas Pipeline Co.*, 2 F.3d at 1409, n. 34 (noting that courts may well have inherent power to order a party to produce pertinent documents).

The federal and state laws cited by defendants are not to the contrary. First, the state privacy law, La. R.S. 46:56, plainly binds neither the federal government nor a federal court hearing suit under federal question jurisdiction. *See G.D. v. Riley*, No. 2:05-CV-980, 2007 WL

4

Case 3:11-cv-00470-JJB-RLB   Document 74   03/09/12   Page 4 of 8

2206559 (S.D. Ohio July 30, 2007) (magistrate judge opinion); *A Helping Hand, LLC v. Baltimore County, Md.*, 295 F.Supp.2d 585, 592 (D. Md. 2003). Second, the federal statutes and regulations cited all contain provisos for use of such information pursuant to appropriate court order. *See, e.g.,* 7 C.F.R. § 272.1(c)(1)(i) (requiring State agencies participating in food stamp programs to permit disclosure of information regarding applicants of recipients to persons "directly connected with the administration or enforcement of … Federal assistance programs"); 45 C.F.R. § 205.50(a)(1)(i)(B) (requiring State plans for financial assistance under the Social Security Act to disclose information concerning applicants and recipients when directly connected with an investigation, prosecution or criminal or civil proceeding conducted in connection with the administration of any such plan or program); 42 U.S.C. § 1396a(a)(7) (requiring State plan for medical assistance to restrict disclosure of information concerning applicants and recipients to purposes directly connected with administration of the plan); 42 C.F.R. § 431.306 (requiring state agency providing medical assistance under auspices of Medicare or Medicaid to restrict access to information concerning applicants for or recipients of Medicaid to persons subject to standards of confidentiality comparable to the state agency administering the program); 45 C.F.R. § 164.512(e) (under Health Insurance Portability and Accountability Act (HIPAA), disclosure of protected health information allowed in a judicial proceeding if a protective order prohibits use of the information outside the litigation and the information will be returned or destroyed after litigation ends); 34 C.F.R. § 99.31(a)(3)(ii) (permitting educational agency or institution to disclose personally identifiable information from a student's educational record without consent if disclosure is made to authorized representative of the Attorney General of the United States when enforcing compliance with Federal legal requirements relating to Federal or State supported education programs).

As the foregoing suggests, no federal law prevents disclosure of relevant information sought by the federal government—pursuant to its executive power to "take Care that the Laws be faithfully executed" under Art. II, § 3 of the Constitution—unless that information is privileged. *See* Fed. Rule Civ. P. 26. The State makes no claim that the information is subject to any cognizable federal privilege.

Lest the defendants forget, the Attorney General is affirmatively empowered by federal law to "bring a civil action in an appropriate district court for such declaratory or injunctive relief as is necessary to carry out this Act." 42 U.S.C. § 1973gg-9(a). The Court cannot escape concluding that the protective order was appropriately issued. To rule otherwise would incentivize a State's refusal to agree on an appropriate protective order and would effectively defeat the United States' enforcement of NVRA. Congress surely contemplated no such obstacle in either Rule 26 or the other privacy provisions discussed above.

B. <u>Number of Interrogatories and Requests for Admission</u>

Because the magistrate judge's rationale for forcing joint requests on defendants equal to plaintiff's allotted number applies to both types of discovery mechanisms, the Court treats them in tandem. The defendants chiefly argue that their interests are not so closely aligned as to justify joint treatment for discovery purposes. While they acknowledge partial alignment of interests, they contend each entity has independent interests in learning how its agency was investigated or monitored. They point out that because each entity has programs and obligations specific to the group of citizens whom they serve, their services necessarily vary and thus the obligations imposed by NVRA vary as well. Finally, they rely on this Court's ruling on the motion to dismiss (Doc. 53), which found that only the Secretary of State and the State itself could be held responsible for designating voter registration agencies responsible for carrying out

NVRA responsibilities. They assert that recognition of differing duties necessarily means the magistrate judge erred in finding an alignment of interests.

The magistrate judge did not clearly err in setting the discovery limits imposed. Any party may seek leave to file more discovery requests. (Doc. 63, p. 3). Defendants themselves acknowledge at least partial alignment of interests, and their briefing on these issues appears at least highly coordinated and at most near mirror images of each other. (*Compare, e.g.,* Doc. 66-2 *with* Doc. 68-1). This degree of briefing coordination strongly implies a willingness—and, hence, an ability—to coordinate discovery as well. Rule 33(a)(1) provides that "[u]nless … ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including discrete subparts." Fed. Rule Civ. P. 36(a) provides that a "party may serve on any other party a written request to admit … the truth of any matters…."[1] Rule 26(b)(2)(A) expressly permits a court to "alter the limits in these rules on the number of … interrogatories" as well as "limit the number of requests under Rule 36." These Rules provide relatively little guidance to judges on the standards to be employed. This grants them wide latitude to make discovery rulings based on their impressions on a variety of topics, including whether "the discovery sought is unreasonably cumulative or duplicative…." Fed. Rule Civ. P. 26(b)(2)(C)(i). The Court remains unconvinced that the magistrate judge's concerns about duplicative discovery are clearly erroneous or contrary to law.

---

[1] Local Rule 36.2 caps the number of requests at 25 in the aggregate without leave of the Court. It also permits parties to file written motions for obtaining additional requests.

Case 3:11-cv-00470-JJB-RLB   Document 74   03/09/12   Page 7 of 8

III.

Because the magistrate judge did not clearly err or act contrary to federal law, the magistrate judge's discovery rulings (Docs. 61, 63) are hereby AFFIRMED and defendants' appeals (Docs. 64-68) are hereby DENIED.

Signed in Baton Rouge, Louisiana, on March 9, 2012.

	**JAMES J. BRADY, DISTRICT JUDGE**
	**MIDDLE DISTRICT OF LOUISIANA**

8

Case 3:11-cv-00470-JJB-RLB    Document 74    03/09/12    Page 8 of 8