# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| UNITED STATES OF AMERICA | CIVIL ACTION |
|---|---|
| VERSUS | NUMBER: 11-470-JJB-DLD |
| STATE OF LOUISIANA, ET AL | |

## ORDER

This matter is before the court on a referral from the district court regarding the following:

1. The district court's ruling of July 13, 2012 (rec.doc. 102) concerning the issuance of a modified Order regarding protocol for production of documents and exchange of ESI and the issuance of a modified protective order consistent with the ruling.

2. DHH's motion for protective order (rec.doc 77), which is opposed (rec.doc. 81).

3. Plaintiff's motion in the alternative for leave to propound additional interrogatories to the DHH defendants and to shorten response time (rec.doc.82), to which no opposition has been filed.

4. Plaintiff's motion to compel production in response to its first request for production of documents (rec.doc. 90), which is opposed by DHH and Schedler (rec.docs. 94 & 95). Plaintiff has filed a reply brief (rec.doc. 103)

*Background*

Plaintiff brings this action for declaratory and injunctive relief pursuant to the National Voter Registration Act of 1993 ("NVRA), alleging that defendants have failed to provide voter registration opportunities as required by Section 7 of the NVRA from January 2007, through January, 2011, and that this failure to provide eligible public assistance and disability services clients with the opportunity to register to vote violates the NVRA. (rec.doc. 1)

The court held a conference with the parties which determined that discovery should be conducted in phases, and in connection with same, the parties were ordered to begin written discovery. The court stayed any responses to the written discovery until the protocols for production were determined, and the court issued an order regarding the discovery protocols on March 7, 2012 (rec.doc. 73) Plaintiff stated during the March 7, 2012, status conference that it has propounded some written discovery to defendants, and the court determined that since a discovery protocols plan and a protective order[1] were now in place, responses to the outstanding discovery would be due thirty days from the conference.

Next, the parties agreed that the initial phase of discovery should consist only of written discovery and that 120 days was sufficient to complete the written discovery, including the filing of any motions related to the discovery. The court advised that the deadline of 120 days would not begin to run until after the district judge issued rulings on the outstanding appeals of previous discovery orders, and at that time, this court would issue an order consistent with the district judge's rulings, including the deadline of 120 days to complete written discovery. Thus, the deadline of 120 days to complete written discovery will begin running upon the entry of this Order.

***The Ruling on the Appeal of the March 7, 2012, Order.***

As stated above, on March 7, 2012, the undersigned issued an order regarding the discovery protocol plan for documents and electronically stored information ("ESI")

---

[1] Defendants have appealed the present protective order to the district judge, and a ruling was issued on July 13, 2012. For the purposes of the March 7, 2012, Order, however, the parties were advised to proceed as though a protective order were in place, even if it later was determined by the district judge not to be the one entered by the magistrate judge.

(rec.doc. 73). Plaintiff filed a timely objection to the order (rec.doc. 79), complaining of Section E, entitled "Destruction of Information after Final Judgment." Defendants responded to the objection, requesting that the district court uphold the magistrate judge's order in its entirety. On July 13, 2012, the district court issued a ruling on the appeal, finding that Section E should be revised as followed:

> Except as otherwise required by federal law under the Records Disposal Act, subject to subsequent order of this Court, all non-public documents and information, including ESI, received by a Party from any other Party in the course of this litigation shall be destroyed and/or permanently deleted from the receiving Party's electronic storage within thirty (30) days after the expiration of all appeal rights relating to the final judgment entered in this case. (rec.doc. 102, pg. 4)

Therefore, in accordance with the district court's ruling, the order regarding discovery protocol for electronically stored information ("ESI") (rec.doc. 73), will be revised only insofar as Section E is concerned to reflect the language delineated in the above paragraph. With regard to paragraph 11 of the protective order of December 20, 2011 (rec.doc. 61), that paragraph will be revised to reflect the same language. A revised discovery protocols plan and a revised protective order shall be entered into the record separately.

### *DHH's March 20, 2012, Motion for Protective Order*

The court allowed plaintiff to serve forty interrogatories, including all discrete subparts, to each "interested entity." (rec.doc. 63) DHH moved for a protective order on the grounds that plaintiff's interrogatories to it exceeded not only the number permitted by Federal Rule of Civil Procedure 33, but also the number of additional interrogatories allowed by the magistrate judge. (rec.doc. 77) DHH contends that there are six agencies

administered by DHH, and each of the agencies is governed by distinct rules and policies administered by a self-contained staff; thus, there is no single policy which applies to all six agencies. (rec.doc. 77-1, pg. 2).

DHH asserts that interrogatories 1, 3, 4, 5, and 6 all begin with the phrase, "[f]or each public assistance or disability services program that DHH administers, describe in detail all practices, policies, or procedures that have been in effect at any time from 2007 to the present . . .," and because there are six agencies, comprise 30 interrogatories rather than 5. DHH argues that the interrogatories as written therefore exceed the number allowed in the court's discovery order. In support of its contention, DHH cites to *Ferrand v. Schedler,* No. 11-cv-926, 2011 U.S. Dist. LEXIS 82906 (July 21, 2011), wherein plaintiffs issued interrogatories whose instructions required the defendants to provide answers for each of three separately defined time periods, and the court found that these instructions "forced the defendants" to "organize both their search for responsive information and their interrogatory answers within each time period, rather than searching for and providing one response that covers the entire ten years." (rec.doc. 77-1, pg. 3, *quoting Ferrand, supra*, at 3-4.) DHH also contends that the interrogatories herein should be treated the same way as the interrogatories in *Ferrand* were treated. DHH makes the same argument, with slight variations, with respect to interrogatories 7, 9-11, 20, 22-29, and 31. Lastly, DHH also complains that interrogatory 1 has five discrete subparts and interrogatory 28 has seven discrete subparts.

-4-

Addressing the issue of "discrete subparts" first, the court notes that Rule 33 does not define the term "discrete subparts," however, the Advisory Committee's notes to Rule 33(a) provide some guidance, stating that:

> "[P]arties cannot join as 'subparts' questions that seek information about discrete separate subjects. However, a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such questions."

Further, the court in *Kendall v. GES Exposition Services*, Inc., 174 F.R.D. 684, 685 (D.Nev. 1997) opined that the term "discrete subparts" meant that "interrogatory subparts are to be counted as one interrogatory . . . if they are logically or factually subsumed within and necessarily related to the primary question," explaining that the best test to examine whether or not a subpart counted as a separate interrogatory is whether or not the subpart could stand independently of the first question. Other courts, including the *Ferrand* court, have held similarly, finding that an interrogatory directed at eliciting details concerning a common theme should not count as a multiple interrogatory. *See, e.g., New River Dry Dock, Inc. v. Falls at Marina Bay, L.P.*, 2008 WL 2620727 (S.D. Fla. 2008); *Federal Trade Commission v. Nationwide Connections, Inc.,* 2007 WL 2462015 (S.D. Fla. 2007); *Cardenas v. Dorel Juvenile Group, Inc.,* 231 F.R.D. 616, 620 (D.Kan. 2005). However, an interrogatory requesting information about a "certain event and for the documents about it should be counted as two interrogatories." *Kendall*, 174 F.R.D. at 686.

The court conducts a case-by-case analysis in determining whether a party may exceed the allotted number of interrogatories set forth in Rule 33, or in this case, the allotted number of interrogatories set forth by court order. *See 8A Wright, Miller & Marcus,*

*Federal Practice and Procedure § 2163 (2d ed.1994)*. Federal Rule 33(a) also provides that leave to serve additional interrogatories should be granted when consistent with the principles of Rule 26(b)(2). Hence, the principles set out in Rule 26(b)(2)(C) govern the court's decision whether to grant Plaintiff's request to serve additional interrogatories. Rule 26(b)(2)(C) states that discovery should be limited if the Court determines that the requested discovery is unreasonably cumulative or duplicative, the party seeking discovery has had ample opportunity to obtain the information sought, or the burden or expense outweighs the likely benefit. Fed.R.Civ.P. 26(b)(2)(C) (i),(ii),(iii).

> Interrogatory 1 reads as follows:
>
> For each public assistance or disability services program that DHH administers, describe in detail all practices, policies, or procedures that have been in effect at any time from 2007 to the present that determine the process by which persons may apply for, recertify, renew, or change his or her address for services or benefits, stating when such policies, practices or procedures came into or went out of effect and include in your description:
>
> a) whether applicants or clients can complete some or all of the applicable steps by telephone, mail, online, or fax;
>
> b) whether an interview is requires and, if so, when and when in the process the interview takes places;
>
> c) whether waivers are granted for interviews, and if so, under what circumstances;
>
> d) whether and how the process varies based on the mode in which all or part of the transaction is completed (e.g., face-to-face, by telephone, by mail, or online); and
>
> e) whether and how the process varies from office to office.

When applying the test as to whether or not the subsequent questions (subparts a-e) are subsumed and related to the first question, it is quite clear that the subparts cannot

stand alone and the subparts concern details relating to a common theme; *i.e.*, the subparts request specific details relating to how change-of-addresses are handled.  The court finds that Interrogatory 1 therefore counts as one interrogatory.

Interrogatory 28 reads as follows:

For each client and/or applicant database for public assistance or disability services programs administered by DHH, identify all documents such as training manuals, handbooks, and any other explanatory documents sufficient to explain coding rules and interpretation of each identifying, demographic, or transaction-related database field, including all documents relating to:

a)  Data cleaning/editing/checking procedures applied to data after collection (*e.g.*, capitalization, range tests, white space, punctuation);

b)  Additional language/character set information;

c)  Additional field type information (*e.g.*, date format, number format);

d)  Internal field spearators or parsing rules for combined fields;

e)  Missing data codes/default data entry values where response not supplied;

f)  Data purging rules (on what basis are subjects removed after collection);

g)  Coding/labeling (any code or label sets associated with response values, standard abbreviations used).

It is likewise evident that the subparts of Interrogatory 28 cannot stand alone and are subsumed into the main question of identifying the documents that explain coding rules and interpretation of various database fields.  The subparts clearly are designed to elicit details about the documents and therefore are not counted as separate interrogatories.  The court therefore will deny DHH's motion for protective order in this regard.

Moving on to DHH's complaints that the interrogatories exceed the presumptive number of 40 set by the magistrate judge because each question requires a separate answer from each of the six agencies under DHH, the court finds that DHH's reliance on

-7-

*Ferrand* is misplaced. In *Ferrand*, the court was addressing three *separate time periods* contained within one interrogatory, not an interrogatory that addressed one subject but concerned different agencies. The court also is not persuaded by DHH's arguement that the discovery order allowed 40 interrogatories directed to each "interested entity," and that by asking about six agencies in one interrogatory, the interrogatory became six interrogatories. The magistrate judge in the *Ferrand* case cited by DHH addressed this very issue. In *Ferrand*, plaintiff's interrogatory first asked for a list of the programs administered by the agency, and then seven questions relating to the procedures for clients to apply for the assistance. The court found that had the question been phrased with "for each public assistance program the agency administers, describe the procedures. . .," it would be "more obvious that identification of the program is a necessary and integral part of the remainder of the questions, not a discrete question on a different topic." *Ferrand*, at *17-18. The court further found that the interrogatory therefore consisted of one question and not multiple questions. Here, plaintiff used specific phrases such as "for each public assistance or disability services program that DHH administers," "for each client and/or applicant database for public assistance or disability services programs administered by DHH," etc. Clearly, the interrogatories at issue here each concerned one subject or topic, and were addressed to one "interested entity" which administers several agencies and/or programs. Here, the court agrees with the findings of the *Ferrand* court, and finds that each of the contested interrogatories consists of just one question directed to different programs or agencies administered by DHH.

Further, even if the interrogatories could be construed as multiple ones outside the allowed number of interrogatories, the court would allow the additional interrogatories as

-8-

Case 3:11-cv-00470-JJB-DLD   Document 124   08/27/12   Page 8 of 15

plaintiff has shown good cause for the interrogatories in that DHH oversees multiple agencies and DHH has admitted that each agency has distinct rules and policies. The court also notes that DHH has not argued that the discovery is unreasonably cumulative or duplicative, or that the burden or expense of responding to the discovery outweighs its likely benefit, and to the extent that DHH may attempt to raise such arguments, those arguments have been abandoned due to DHH's failure to raise those objections on a timely basis. The court therefore will deny the motion for protective order in its entirety, and order DHH to respond to the interrogatories within the time limits allowed under Rule 33.

***Plaintiff's Motion for Leave to Propound Additional Interrogatories (rec.doc. 82)***

In light of the court's ruling concerning DHH's motion for protective order (rec. doc. 7), plaintiff's motion for leave to propound additional interrogatories will be denied as moot.

***Plaintiff's Motion to Compel Responses to Request for Production (rec.doc. 90)***

Plaintiff propounded an identical set of requests for production of documents upon the three defendants in this case: DHH, Schedler, and DCFS. These same defendants are also defendants in the *Ferrand* case. In its motion, plaintiff contends that DHH failed to produce any documents whatsover, and Schedler failed to produce a complete set of responsive documents. At issue are the following three requests for production:

1. All requests for production of documents, requests for admission, and interrogatories served on Defendants by the plaintiffs in *Ferrand v. Schedler*, No. 2:11-CV-926 (E.D. La. filed Apr. 19, 2011), as well as all documents - including written responses and objections, and document productions - provided by Defendants in response.

2. All documents exchanged between Defendants and the plaintiffs or their attorneys in *Ferrand v. Schedler*, both before and after the initiation of litigation, including all written

> correspondence and all other documents attached to or otherwise included with such correspondence.

3. All deposition transcripts from *Ferrand v. Schedler*.[2]

DCFS responded to the request with a USB storage drive containing only copies of its own discovery documents in the *Ferrand* case, but did not include copies of the discovery documents relating to the other *Ferrand* defendants. (rec.doc. 95, pg. 2) The instant motion is not directed to DCFS.

With regard to Schedler's responses, plaintiff provided a copy service vendor to Schedler to copy the responsive documents, and Schedler contends that he provided documents responsive to Request No. 1, including a supplemental response and privilege log, but that such responses did not include the discovery documents relating to defendant DHH as DDH was disputing the discoverability of its documents in the *Ferrand* case. (Id., at 3-4) Schedler argues that his decision not to produce the partial copies of the DHH discovery documents in his possession in the *Ferrand* matter "is grounded on the opinion that such production would effectively constitute a ruling on the dispute between DHH and Plaintiff, a position reserved to the magistrate judge." (Id., at 6) Schedler states that once the dispute between DHH and plaintiff is resolved, Schedler could produce the DHH discovery documents, although his set is a limited and incomplete set as the complete set is in the possession of DHH. Schedler also objected to Request No. 2 as being overbroad, burdensome and not relevant, or not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff appears to concede that this request is overbroad if the

---

[2]Schedler directed plaintiff to the court reporter regarding the *Ferrand* depositions, and as plaintiff has raised no argument with respect to the copies of the deposition transcripts, the issue is considered abandoned.

correspondence withheld by Schedler relates to routine scheduling matters or the compromise and settlement efforts among the *Ferrand* litigants. (rec.doc. 106, pg. 6, ftnt 6)

Therefore, with regard to Schedler's production, the court finds that his production with regard to Request No. 1 is sufficient because Schedler produced only his own discovery documents in the same manner as DCFS did, and DCFS' production is not at issue in this motion; thus, the motion to compel is denied with regard to any defendant producing the *Ferrand* discovery documents of another defendant. To the extent the parties deem it necessary, such production may also be designated as "Confidential Information" pursuant to the current protective order. With regard to Request No. 2, plaintiff conceded it was only requesting "substantive communications regarding the [*Ferrand*] litigation or Section 7 of the NVRA," and not routine correspondence. (rec.doc. 106, pg. 6) Thus, to the extent Schedler failed to provide the "substantive communications," Schedler shall be ordered to do so within 14 days of this order.

With regard to DHH, DHH objects to the request for production because the requests are overbroad, seek documents which are irrelevant to this case, are cumulative or duplicative, and can be obtained from some other source that is more convenient and less burdensome to DHH. DHH argues that plaintiff has not made the requisite showing that the "entirety (or even the majority) of the requests at issue are 'within the scope of discovery.'" (rec.doc. 94, pg. 3) In support of its position, DHH argues that the requests "do not seek a particularly described *type* of document (*e.g.*, 'all letters received . . . '), but instead seek all documents exchanged pre- and post-filing . . . in a completely separate federal case. . . ." (Id., at pg. 4, emphasis in original.) DHH contends that plaintiff should

-11-

be required to narrow the scope of these requests to target only the relevant documents in the *Ferrand* matter. DHH also argues that if the motion to compel is granted, "then future discovery requests from Plaintiff *will* be duplicative of what Plaintiff has already received, and the unreasonably burdensome task of weeding-out the already-turned-over documents responsive to such requests will fall to DHH."[3] (Id., at 5, emphasis in original.) Finally, DHH contends that plaintiff could "easily and cheaply obtain" the documents from the *Ferrand* plaintiffs, and DHH has "no doubt whatsoever" that those attorneys would "readily accede" to the request. (Id. at 6.)

Federal Rule of Civil Procedure 26(b) allows "discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. The Federal Rules of Civil Procedure therefore permit broad discovery, allowing inquiry into any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue related to the claim or defense of any party. *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991); Fed. R. Civ. P. 26(b)(1). Once a relevancy objection has been raised, the party seeking the discovery must demonstrate that the request is within the scope of discovery. Once this showing has been made, the responding party must make a showing of some sufficient reason why discovery should not be allowed. *Andritz Sprout-Bauer, Inc. v. Beazer East, Inc.*, 174 F.R.D. 609 ( D.C. Pa. 1997). A showing of sufficient reason requires that the responding party clarify and explain their objections, and provide support for those objections. *Krawczyk v. City of Dallas*, 2004 WL 614842, * 6 (N.D.Tex. Feb.27, 2004)

---

[3] DHH also argues that the discovery is duplicative because if plaintiff believes it is entitled to receive the discovery documents from each of the defendants, the result is that plaintiff would have three copies of the same documents. This is a specious argument in that both DCFS and Schedler already have responded with only its own discovery documents. The discovery would be duplicative only if DHH already produced documents and had to produce the same documents again.

-12-

*(citing Ahern v. Trans Union LLC Zale Corp.*, 2002 WL 32114492, *2 (D.Conn. Oct.23, 2002)). The party resisting discovery has the burden to establish the lack of relevance by showing that the requested discovery either is outside the broad scope of relevance as defined by Rule 26(b)(1), or is of such marginal relevance that the potential harm that would arise from discovery outweighs the "ordinary presumption in favor of broad disclosure." *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467 (N.D. TX 2005), *quoting Scott v. Leavenworth Unified School Dist. No. 453*, 190 F.R.D. 583, 585 (D.Kan. 1999) *(citing Etienne v. Wolverine Tube, Inc.*, 185 F.R.D. 653, 656 (D.Kan. 1999).

Here, DHH has failed to show that the requested discovery is outside the broad scope of relevance, and they have failed to clarify their objections, or provide support for those objections. Simply saying that the requests ask for irrelevant information is not enough. Also, while DHH concedes that "some of the *Ferrand* documents are undoubtedly relevant to this case," DHH did not produce those documents, arguing that "DHH should not be required to copy (free of charge) and transmit to Plaintiff *all* of the *Ferrand* documents, including those that are not relevant, just so that Plaintiff can obtain the *Ferrand* documents that *are* relevant. " (rec.doc. 94, pg 4-5, emphasis in original). The court is not persuaded by DHH's arguments. First, DHH had an obligation to produce the relevant documents, but failed to do so. Second, DHH has provided no support for its contention that it should not be required to produce its documents because plaintiff could request the documents from the *Ferrand* plaintiffs, or because the *Ferrand* plaintiffs would "readily accede" if asked to produced the requested documents. The court therefore will order that DHH produce copies of its own discovery documents from the *Ferrand* case, along with any "substantive communications" regarding that litigation or Section 7 of the

-13-

Case 3:11-cv-00470-JJB-DLD   Document 124   08/27/12   Page 13 of 15

NVRA. Third, although DHH failed to argue specifically that the production of the relevant documents was burdensome due to cost, the court will exercise its broad discretion in discovery matters, and will order that plaintiff bear the cost of copying DHH's responsive documents, in the same manner as plaintiff assumed the cost of copying Schedler's documents. In all other respects, the motion to compel will be denied.

Accordingly,

**IT IS ORDERED** that DHH's motion for protective order (rec.doc. 77) is **DENIED**, and DHH shall respond to the interrogatories within thirty (30) days of this order.

**IT IS FURTHER ORDERED** that plaintiff's motion for leave to propound additional interrogatories (rec.doc. 82) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that plaintiff's motion to compel responses to requests for production (rec.doc. 90) is **GRANTED in part and DENIED in part** as follows:

1. Defendant Schedler shall respond to Request No. 2 with "substantive communications," within thirty (30) days of this order, to the extent he has not already done so.

2. Defendant DHH shall fully respond, as delineated above, to Requests Nos. 1 and 2 within thirty (30) days of this order.

3. Plaintiff shall assume the cost of copying DHH's responsive documents to Requests Nos. 1 and 2.

4. In all other respects, the motion to compel (rec.doc. 90) is **DENIED**.

**IT IS FURTHER ORDERED** that a revised protective order and a revised discovery protocol plan will be issued by the court under separate orders, and will be revised in accordance with the district court's ruling of July 13, 2012 (rec.doc. 102).

Signed in Baton Rouge, Louisiana, on .August 27, 2012

_____
**MAGISTRATE JUDGE DOCIA L. DALBY**