# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CIVIL ACTION |
| VERSUS | NO.: 11-470-JWD-RLB |
| STATE OF LOUISIANA, ET AL. | |

## ORDER

Before the court is Defendant Schedler's Motion to Compel Answers to Interrogatories by Tom Schedler, Louisiana Secretary of State. (R. Doc. 201). The United States has filed an Opposition. (R. Doc. 206). This discovery dispute concerns the sufficiency of responses to three interrogatories propounded on the United States by Defendant Schedler. Based on the following, Defendant Schedler's Motion is **DENIED**.

## I. Background

On July 12, 2011, the United States filed this enforcement action for declaratory and injunctive relief under the National Voter Registration Act of 1993 ("NVRA"), 42 U.S.C. § 1973gg-9(a), against the State of Louisiana and various state agencies and officials, including Defendant Schedler. (R. Doc. 1). Specifically, the United States has sued Defendant Schedler "in his official capacity as the chief state election official responsible for coordinating Louisiana's responsibilities under the NVRA" pursuant to 42 U.S.C. § 1973gg-8 and La. R.S. §§18:18, 36:741. (R. Doc. 1 at 2). The United States alleges that the defendants failed to provide voter registration opportunities and assistance to eligible applicants and recipients of public assistance and disability services in Louisiana pursuant to Section 7 of the NVRA, 42 U.S.C. § 1973gg-5. (R. Doc. 1 at 4-8). The United States seeks a declaration that the

defendants are in violation of NVRA and injunctive relief to ensure ongoing compliance with NVRA. (R. Doc. 1 at 8).

On September 19, 2011, Defendant Schedler propounded his First Set of Interrogatories to the United States. (R. Doc. 201-2). Defendant Schedler characterizes the interrogatories at issue as asking the United States "(1) to identify the acts or omissions on the part of the Secretary of State that plaintiff believe to have constituted a violation of the NVRA, (2) the dates on which each such act or omission occurred, (3) where the act or omission took place, and (4) how each such act or omission violated the NVRA." (R. Doc. 201-11 at 13). Defendant Schedler states that he needs this information "to prepare his defense, to identify witnesses and documents to address those facts, to assess prospects for summary judgment and to narrow the defense to facts that are genuinely at issue." (R. Doc. 201-11 at 13). The United States provided its initial responses to these interrogatories on October 24, 2011. (R. Doc. 201-3).

On January 16, 2012, Defendant Schedler demanded more complete answers to Interrogatory Nos. 2, 3, and 4, which concern the United States' allegations that Defendant Schedler failed to comply with or otherwise violated the NVRA. (R. Doc. 201-4). Defendant Schedler asserted that the United States' responses to Interrogatory Nos. 2, 3, and 4 were "meaningless . . . regarding how, when and where [the United States] contend[s] the Secretary of State failed to comply with or violate the NVRA [and] amounts to a failure to respond at all." (R. Doc. 201-4 at 1).

On March 2, 2012, the United States responded that Defendant Schedler had "provided no information that would suggest that [the United States'] responses are not, in fact, substantive and well-founded responses" to Interrogatory Nos. 2, 3, and 4. (R. Doc. 201-5 at 1). The United States further acknowledged that it has a duty to supplement its responses. (R. Doc. 201-5 at 1).

On April 24, 2012, the United States provided Defendant Schedler with responses to his First Request for Production of Documents, and identified the documents Bates numbered USA_0000001 to USA_0000398 as responsive to the interrogatories at issue. (R. Doc. 201-10 at 1).

On December 11, 2014, after over two years of additional discovery, Defendant Schedler once again asked for complete responses to Interrogatory Nos. 2, 3, and 4. (R. Doc. 201-6). Defendant Schedler asserted that the United States' responses were not responsive because they contained "[b]oilerplate objections and generalized, conclusory statements that do not include the specific acts, the date the acts occurred nor the persons who committed the acts are not responsive to the questions posed in the interrogatory." (R. Doc. 201-6 at 4). On January 2, 2015, the United States propounded an amended and supplemental response to these interrogatories. (R. Doc. 201-7).

On January 16, 2015, Defendant Schedler objected to the amended and supplemental response because it refers to a private party NVRA enforcement action—*Scott v. Schedler*, No. 2:11-cv-926 (E.D. La.)—and purports "to give an illustrative list in vague and general terms as to acts and/or omissions on the part of the Secretary of State that the USA says violate the NVRA." (R. Doc. 201-8 at 1). Defendant Schedler informed the United States that he would bring a motion to compel within one week of the correspondence unless "full and complete responses" are provided before then. (R. Doc. 201-8 at 1). On February 6, 2015, the United States responded that "the United States has fully and completely responded to the referenced interrogatories in accordance with its obligations under Rule 26(e) and 33 of the Federal Rules of Civil Procedure." (R. Doc. 201-9 at 3).

On February 6, 2015, having received the United States' response, Defendant Schedler filed the instant Motion to Compel. (R. Doc. 201). In his Rule 37(1) certification of good faith attempt to resolve this discovery dispute, Defendant Schedler references the foregoing correspondences between the parties. (R. Doc. 201-12).

Defendant Schedler raises three broad arguments regarding the alleged deficiencies of the United States' responses. First, Defendant Schedler argues that, to the extent the United States has withheld information based on its general objections, those objections must be overruled because there is no explanation in the United States' responses regarding how those objections specifically relate to the interrogatories at issue. (R. Doc. 201-11 at 15, 17-18). Second, Defendant Schedler argues that the court must overrule the United States' specific objections based upon (i) the attorney-client, work product, investigatory, and/or deliberative process privileges; (ii) the ongoing state of discovery; and (iii) the presumption that Defendant Schedler may not be held liable for NVRA non-compliance. (R. Doc. 201-11 at 16-18). Finally, and more substantively, Defendant Schedler argues that the responses themselves provide "vague, general, conclusory allegations, lacking the particular content requested in the Secretary's interrogatories." (R. Doc. 201-11 at 17). Defendant Schedler specifically challenges the supplemental responses provided by the United States as broadly providing "illustrations" rather than full responses, by referring documents by Bates numbers that Defendant Schedler could not locate in the United States' productions of documents (USA_0013890 through USA_0014369 ), and by referring to the facts in the *Scott* decision. (R. Doc. 201-11 at 18-21).

The United States opposes the Motion on the grounds that "(1) Defendant Schedler failed to confer in good faith with counsel for the United States before filing his motion to compel, as required by Rule 37 of the Federal Rules of Civil Procedure, and such conferral would have

likely resolved any legitimate dispute that may have existed as between the parties, without burdening the Court; and (2) the United States has responded fully and completely to the interrogatories in question." (R. Doc. 206 at 1). First, the United States represents that it "has not withheld relevant non-privileged information on the basis of the general objections" and "[n]otwithstanding the general and specific objections asserted, Defendant Schedler does in fact have in his possession all of the evidence upon which the United States is presently relying in support of its claims." (R. Doc. 206 at 5). Second, the United States represents that references in its response to the facts of *Scott* is meant "to augment and amplify" the results of the investigation conducted by the U.S. Department of Justice ("DOJ") in early 2011, which were provided to Defendant Schedler in the 2012 production. (R. Doc. 206 at 6). Third, the United States represents that Defendant Schedler's claim that he was not provided documents referenced in the supplemental responses is based on the citation to the DOJ's internal page-level Bates numbers as opposed to the document-level Bates numbers used by the United States in discovery in this litigation. (R. Doc. 206 at 7-8).[1] Finally, the United States argues that it has complied with Rule 33(d) of the Federal Rules of Civil Procedure by referring to produced documents in its response to the interrogatories at issue. (R. Doc. 206 at 8-13).

## II. Law and Analysis

### A. Legal Standards

Rule 26(b)(1) of the Federal Rule of Civil Procedure provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." To be relevant, "information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The rules

---

[1] This error is explained in further detail in the United States' letter to Defendant Schedler dated February 9, 2015. (R. Doc. 206-3).

governing discovery are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Hebert v. Lando*, 441 U.S. 153, 176 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978). Furthermore, it is well established that the scope of discovery is within the sound discretion of the trial court. *E.g.*, *Quintero v. Klaveness Ship Lines*, 914 F.2d 717, 724 (5th Cir. 1990) ("the district court has wide discretion in determining the scope and effect of discovery"). The scope of discovery is not without limits, however, and the court may protect a party from responding to discovery when: (i) it is unreasonably cumulative or duplicative, or obtainable from some other less-burdensome source; (ii) the party seeking discovery has had the opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2).

Rule 33 of the Federal Rules of Civil Procedure provides for the service of written interrogatories. A party seeking discovery under Rule 33 may serve interrogatories on any other party and the interrogatory "may relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2). "If the answer to an interrogatory may be determined by examining . . . a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by: (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries." Fed. R. Civ. P. 33(d).

6

If a party fails to answer interrogatories as required under Rules 33, the party seeking discovery may move to compel disclosure and for appropriate sanctions under Rule 37. An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4).

### B. The Interrogatories and Responses at Issue

The three interrogatories at issue request the United States to provide, in detail, the specific alleged violations of the NVRA by Defendant Schedler:

**Interrogatory No. 2:**

Please describe each and every act by the Secretary of State that you contend either violated or constituted a failure to act under the NVRA, and provide the following information with reference thereto:

a. When each act occurred;
b. Where each act occurred;
c. Who was involved in the commission of each such act(s);
d. How each such act affected the requirements of the NVRA.

**Interrogatory No. 3:**

Please describe each and every omission by the Secretary of State that you contend either violated or constituted a failure to act under the NVRA.

**Interrogatory No. 4:**

Please describe precisely and in detail in what way the Secretary of State failed in its responsibilities under the NVRA.

(R. Doc. 201-2 at 1-2).

The amended and supplemental response provided by the United States for these interrogatories states the following:[2]

---

[2] This amended and supplemental response formally responds to Interrogatory No. 2. In its initial responses, the United States' responses to Interrogatory Nos. 3 and 4 reference and incorporate the initial response to Interrogatory No. 2. (R. Doc. 201-3 at 7). Accordingly, this amended and supplemental response to Interrogatory No. 2 also serves as the amended and supplemental response to Interrogatory Nos. 3 and 4.

The United States objects to this interrogatory on the grounds that it seek[s] to discover the mental impressions, conclusions, opinions, or legal theories of counsel for the United States as to the legal merits and relative strengths of its claims in this litigation and/or to the extent that it otherwise seeks to discover information protected by the attorney-client, work product, investigatory, and/or deliberative process privileges. The United States further objects to this interrogatory on the grounds that discovery is ongoing and the United States may not presently be in a position to know the full extent of Defendant Schedler's and his predecessors' noncompliance with the NVRA. The United States further objects to this interrogatory to the extent that it is based upon the incorrect presumption that the Secretary of State may not be held legally responsible for NVRA non-compliance at designated voter registration agencies throughout Louisiana. *See*, *e.g.*, *Scott v. Schedler,* 771 F.3d 831, 838-39 (5th Cir. 2014); *Harkless v. Brunner*, 545 F.3d 445, 451 (6th Cir. 2008). Subject to and without waiving the foregoing objections and the general objections, the United States responds as follows:

Through his and his predecessor's official acts and omissions both prior to and after the commencement of this litigation and the private-party litigation in the Eastern District of Louisiana (*Scott v. Schedler*, No. 2:11-cv-926), the Secretary of State has generally violated the NVRA by, among other things:

1. Failing to adequately monitor NVRA compliance in public assistance and disability services offices in Louisiana.

2. Failing to adequately train and instruct public assistance and disability services offices to offer voter registration opportunities to their clients as required by Section 7 of the NVRA.

3. Failing to maintain an accurate and current list of all Voter Registration Agencies that are or should be designated pursuant to Section 7 of the NVRA.

4. Failing to designate as Voter Registration Agencies all offices in the state that provide public assistance or state-funded disability services, including but not limited to the Office of Aging and Adult Services.

5. Failing to adequately coordinate state responsibilities in the role as chief state election official designated under the NVRA.

Many of the facts which evidence Defendant Schedler's and his predecessors' noncompliance with the NVRA prior to the judgment in *Scott* are within Defendants' possession, custody, and control and/or have been produced during the course of discovery in this litigation and the *Scott* litigation. Although the United States is under no duty to supplement prior discovery responses with information unless it has "not otherwise been made known to the other parties

during the discovery process or in writing," Fed. R. Civ. P. 26(e), the United States nevertheless refers Defendant Schedler to the following previously produced documents, pursuant to Fed. R. Civ. P. 33(d), as illustrative evidence of some of the acts or omissions for which he is officially liable under Section 7 of the NVRA: USA_0013890-USA_0014369 (declarations regarding numerous NVRA Section 7 violations in Louisiana discovered during the Civil Rights Division's field investigation in 2011). Additionally, the United States refers Defendant Schedler to the Uncontested Facts included within the October 5, 2012 Amended and Superseding Pretrial Order filed in *Scott v. Schedler*—many of which concede Louisiana's violations under Section 7, for which Defendant Schedler is officially liable. *See Scott v. Schedler*, No. 2: 11-cv-926 (E.D. La.), ECF No. 373 at 25-44. Similarly, many of the *Scott* plaintiffs' proposed findings of fact relating to the Office of Secretary of State's specific acts or omissions also provide evidence of Defendant Schedler's liability under Section 7. *See Scott*, ECF No. 372 at 28-32.

In *Scott*, the district court found, and the Fifth Circuit affirmed, that Louisiana's designation of its Secretary of State as the chief election official responsible for coordinating the State's responsibilities under the NVRA, pursuant to Section 10 of that Act, 52 U.S.C. § 20509, invested Defendant Schedler with all necessary authority to enforce the NVRA with respect to state agencies, and that Defendant Schedler was therefore liable for failing to ensure statewide NVRA compliance by, *inter alia,* failing to adequately train and monitor voter registration agencies. *Scott v. Schedler*, 771 F.3d 831, 838-39 (5th Cir. 2014) (holding that "coordination" under Section 10 of the NVRA "includes enforcement power," such that "the chief election official's role must be ongoing" in ensuring statewide NVRA compliance). After the *Scott* trial court adjudged Defendant Schedler liable under Section 7 and entered a permanent injunction against him, Defendant Schedler promulgated new regulations in an effort to bring his office and all other mandatory voter registration agencies in Louisiana into compliance with their obligations under Section 7, as determined by the *Scott* court. *See* La. Admin. Code tit. 31, § § 401-421 (2014). Those regulations call for the establishment of departmental and site-based NVRA coordinators, as well as the mandatory reporting of compliance information beginning in January 2014. Thus far, despite the United States' specific written requests for him to do so, Secretary Schedler has not supplemented his discovery responses to provide this highly relevant information regarding his office's and the other Defendants' current compliance with the NVRA. Additionally, Secretary Schedler has appealed the *Scott* trial court's liability determination and is seeking further review of the Fifth Circuit's decision partially affirming that judgment.

Thus, based on the evidence currently in its possession, the United States believes that, beyond the acts and omissions described above, Defendant Schedler's present acts and omissions continue to violate Section 7 of the NVRA by, among other things:

9

> 1. Continuing to disavow that his coordination responsibilities under Section 10 of the NVRA to include an obligation to ensure that voter registration opportunities are provided with all qualifying public assistance and disability services transactions, including remote transactions;
>
> 2. Failing to provide adequate guidance to mandatory voter registration agencies with respect to marking the completed Louisiana mail voter registration application typically distributed to agency clients and applicants (Form LR-1M) as agency-processed applications, rather than mail-in applications, prior to sending them to the appropriate registrar of voters;
>
> 3. Failing to provide adequate guidance regarding the responsibility of mandatory voter registration agencies to offer in-person voter registration services to any individual adult citizen present in the office, upon request, regardless of whether that person engages in a qualifying transaction with the agency. *See* 52 U.S.C. §§ 20503(a)(3)(B), 20506(a)(4);
>
> 4. Failing to adopt policies ensuring that voter registration declaration forms (including those transmitted in connection with remote transactions) are completed, returned and maintained by mandatory voter registration agencies;
>
> 5. Failing generally to ensure that mandatory voter registration agencies in the State of Louisiana are fully and consistently adhering to their responsibilities under Section 7 of the NVRA.
>
> The above-described acts and omissions have resulted and may continue to result in the denial of certain voter registration opportunities that the NVRA mandates Louisiana provide to its public assistance and disability services clients. The above acts and omissions have "affected the requirements of the NVRA" insofar as they have resulted in the failure of many designated Voter Registration Agencies to comply with the requirements of Section 7 of the NVRA.

(R. Doc 201-7 at 3-7).[3]

### C. Resolution of the Discovery Dispute

Based on its review of the arguments and representations of the parties, and the discovery and responses at issue, the court concludes that the United States has fully responded to

---

[3] Defendant Schedler's Memorandum in Support provides a redline comparison between the United States' initial response and the United States' supplemental response. (R. Doc. 201-11 at 5-9). Because Defendant Schedler brought his Motion to Compel after the United States amended and supplemented its response, the court need only determine the sufficiency of the amended and supplemental response.

Defendants Schedler's Interrogatory Nos. 2, 3, and 4 as required by the Federal Rules of Civil Procedure. The United States represents that it has not withheld responsive, non-privileged documents based on its general or specific objections. The United States further represents that it has responded fully and completely to Interrogatory Nos. 2, 3, and 4 based on the information it has at this time.

The United States' supplemental and amended response is sufficient to answer Defendant Schedler's Interrogatory Nos. 2, 3, and 4. The response identifies various acts and omissions allegedly resulting in violations of the NVRA in light of Defendant Schedler's official capacities. That the United States references the record in the *Scott* action augments, rather than diminishes, the United States' written responses. The court recognizes that the United States misidentified the documents relied upon in its amended and supplemental response. Although the United States caused confusion with regard to the documents referenced in its supplemental and amended response, it now represents that the documents referenced were indeed produced in 2012. To the extent the instant Motion hinges upon the United States' error with regard to identifying those documents in its response, Defendant Schedler failed to confer with the United States on this issue (which could have been easily resolved) and its motion will be denied on that basis. *See* Fed. R. Civ. P. 37(a)(1); *Shaw Grp. Inc. v. Zurich Am. Ins. Co.*, No. 12-257, 2014 WL 4373197, at *3 (M.D. La. Sept. 3, 2014) (failure to meet and confer on discovery dispute before involving the court is grounds for denial of a motion to compel).

Furthermore, the court has reviewed the documents from the 2012 production that the United States provided with its Opposition. The United States asserts that these are "examples of information that the United States provided to Defendant Schedler as part of the more than 14,000 document production from the Department of Justice's investigation file in 2012, and

described and referenced again in its supplemental interrogatory responses in January 2015." (R, Doc. 206 at 11).

As represented by the United States, these documents provide the "dates, locations, and circumstances" of certain alleged NVRA violations. (R. Doc. 206 at 10-11). These documents are declarations by DOJ civil rights analysts who investigated the alleged NVRA violations. The first document demonstrates that as of May 24, 2011, the Medicaid application that the Louisiana Department of Health and Hospitals (DHH) made available on its website did not provide a voter registration application or information regarding voter registration. (R. Doc. 206-5). The second document is a declaration by a DOJ civil rights analyst who conducted an undercover field investigation from February 14-16, 2011. (R. Doc. 206-6). This declaration provides four distinct sets of "dates, locations, and circumstances" concerning alleged NVRA violations at public assistance and disability services officers in Louisiana. For example, on February 16, 2011, the DOJ civil rights analyst requested a voter registration form from the Department of Children and Family Services (DCFS) Economic Stability Office in Metairie but was told that the office does not have such a form and was later provided with an outdated form. (R. Doc. 206-6 at 2-3). The United States has complied with Rule 33(d) to the extent its responses to the interrogatories references these documents.[4]

The court reminds the parties that they have a duty to supplement their discovery responses to Phase 1 discovery even though discovery has moved into Phase 2. Fed. R. Civ. P. 26(e). To the extent the United States discovers additional, more specific information responsive to Interrogatory Nos. 2, 3, and 4, it must supplement its current response.

---

[4] Defendant Schedler raised no arguments regarding whether the "burden of deriving or ascertaining the answer" to the interrogatories from the documents "will be substantially the same" for the United States as for himself regarding any of the other documents referenced by the United States in its supplemental and amending response.

**III.     Conclusion**

**IT IS ORDERED** that Defendant Schedler's Motion to Compel (R. Doc. 201) is **DENIED**.

Signed in Baton Rouge, Louisiana, on March 2, 2015.

                                            **RICHARD L. BOURGEOIS, JR.**
                                            **UNITED STATES MAGISTRATE JUDGE**