UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CIVIL ACTION** |
| **VERSUS** | **NO. 11-470-JWD-RLB** |
| **STATE OF LOUISIANA AND LOUISIANA DEPARTMENT OF HEALTH AND HOSPITALS, et al.** | |

**ORDER GRANTING THE UNITED STATES' RENEWED MOTION TO COMPEL**

Before the Court is the United States' Renewed Motion to Compel a Proper Privilege Log (R. Doc. 246) from Defendant, the Louisiana Department of Health and Hospitals (DHH), based on a sample of 40 entries listed in DHH's April 17, 2015 privilege log (R. Doc. 243-1) and WIC privilege log (R. Doc. 243-2).

I.  **BACKGROUND**

On February 6, 2015, DHH submitted a 2,941 page privilege log (R. Doc. 231-4) in response to the United States' second Requests for Production. (R. Doc. 231 at 1). The privilege log listed email communications and their attachments, which DHH claimed were protected from production, in part, by the attorney client privilege and the work product doctrine. (R. Doc. 231-4).

On April 10, 2015, the United States filed its first Motion to Compel a Proper Privilege Log, claiming that all of the descriptions in the privilege log provided by DHH were generally inadequate. (R. Doc. 231). On April 17, 2015, DHH provided the United States with an updated privilege log of 2,302 pages, deleting "over 1500" communications and documents that DHH

had included in its February 6, 2015 privilege log. (R. Doc. 243-3 at 1); (R. Doc. 243-1). On that same day, DHH provided the United States with an additional 259 page privilege log describing "approximately 1,200" responsive documents withheld in relation to a search of 3 WIC custodians. (R. Doc. 243 at 2 n.1); (WIC Privilege Log, R. Doc. 243-2); (DHH's Opp'n, R. Doc. 236 at 4) (confirming the WIC privilege log contains "approximately 1,200" entries). The United States argues that the WIC privilege log suffers from the same defects as DHH's April 17, 2015 privilege log. (R. Doc. 243 at 2 n.1). Therefore, the Court has treated the April 17, 2015 privilege log and the WIC privilege log as one. Together, these privilege logs are 2,561 pages long and contain over 13,000 entries. (April 17, 2015 Privilege, R. Doc. 243-1); (WIC Privilege Log, R. Doc. 243-2).

On May 22, 2015, the Court issued an Order denying the United States' first Motion to Compel to the extent that it sought production of an entirely revised privilege log. (R. Doc. 245). In that same Order, the Court granted the United States leave to renew its Motion, citing up to 40 specific entries from DHH's privilege log that were exemplary of those the United States challenged as insufficient. (R. Doc. 245 at 5). In the event that the United States chose to renew its Motion, the Court further ordered DHH to "submit copies of any identified and challenged documents to the Court for in-camera review." (R. Doc. 245 at 5).

Pursuant to the Court's Order (R. Doc. 245), the United States filed the instant Renewed Motion to Compel, identifying 40 specific entries from DHH's privilege log that it challenges as insufficient. (R. Doc. 246-1 at 2). These items are divided into four categories, each consisting of ten specific entries — "Category One: Communications By and Between Non-Attorneys"; "Category Two: Communications with Descriptions that Suggest No Privilege Applies"; "Category Three: Communications with Descriptions that are too Vague to Determine whether

the Asserted Privilege Applies"; and "Category Four: Communications with Underlying Factual Assertions that Appear Non-Privileged." (R. Doc. 246-1 at 2-10). In a "good faith effort . . . to narrow the ongoing dispute between the parties regarding the sufficiency of DHH's privilege logs" — and without being prompted by the Court — the United States separately filed a 41-page list of "approximately" 3,520 entries from DHH's privilege log "as to which it does not contest DHH's claim of privilege." (R. Doc. 252 at 1); (List of Uncontested Entries, R. Doc. 252-1).

In compliance with the Court's Order (R. Doc. 245 at 5), DHH then submitted for in-camera review the documents described in the 40 privilege log entries challenged by the United States. This process has provided the Court with specific entries on the privilege log to review as well as the benefit of determining whether the privilege is being properly asserted notwithstanding any potential deficiency in the privilege log itself.

## II. APPLICABLE LAW

Rule 26(b)(5) of the Federal Rules of Civil Procedure requires a party withholding information as privileged to: "(i) expressly make the claim" of privilege; and "(ii) describe the nature" of the withheld information in a way that "will enable other parties to assess the claim." A withholding party must "expressly" make its claim of privilege by submitting some form of privilege log describing the otherwise discoverable information being withheld.

The standard for testing the adequacy of a privilege log is whether each entry sets forth facts sufficient to establish each element of the claimed privilege. "The focus is on the specific descriptive portion of the log, and not on conclusory invocations of the privilege or work-product rule, since the burden of the party withholding documents cannot be discharged by mere conclusory assertions." *Chemtech Royalty Assocs., L.P. v. U.S.*, No. 07-405, 2009 WL 854358, at

*3 (M.D. La. March 30, 2009). Generally, a privilege log "should not only identify the date, the author, and all recipients of each document listed therein, but should also describe the document's subject matter, purpose for its production, and specific explanation of why the document is privileged or immune from discovery." *Estate of Manship v. U.S.*, 236 F.R.D. 291, 296 n.4 (M.D. La.), *partially vacated on other grounds by* 237 F.R.D. 141 (M.D. La. 2006); *Haensel v. Chrysler Corp.*, No. 96-1103, 1997 WL 537687, at *4 (E.D. La. Aug. 22, 1997) (same). "Where a party fails to comply with the requirements of Rule 26(b)(5) by submitting an inadequate privilege log, the claim of privilege may be denied." *Manship*, 236 F.R.D. at 296 n.4.

## III.  DISCUSSION

After reviewing the privilege log, the parties' memoranda, and the 40 documents provided by DHH for in-camera review, the Court finds the United States' Renewed Motion to Compel a Proper Privilege Log (R. Doc. 246) must be granted.

### A.  Adequacy of DHH's Privilege Log

The United States has identified 40 privilege log entries representing 4 categories of entries that are "facially insufficient to support the privilege asserted." (R. Doc. 246-1 at 2-7, 8, 9-12). The United States claims that these insufficient entries make it "unable to determine the subject matter of many of these e-mail communications, let alone further evaluate these . . . documents to determine whether the privileges claimed are valid." (R. Doc. 246-1 at 10). These entries consist of emails (and their attachments) between attorneys, non-attorneys, or both, which are being withheld under the attorney client privilege and work product doctrine. (R. Doc. 246-1 at 2-12).

The privilege log provides the following or similar descriptions for much of the challenged entries — FW: NVRA Training; Training Alert!!; NVRA Reporting; FW: NVRA

Tracking Sheet; FW: NVRA Clarifications; RE: NVRA Training; Agency Declaration Forms; RE: RE: NVRA Training; NVRA – WIC documents; FW: NVRA Spreadsheet; Screen shots from PHAME.pdf; Voter Registration Form; Final NVRA-2013; RE: FYI; FW: NVRA Documents; FW: NVRA Clarifications; RE: NVRA; WICADM 1020 FFY 2010.pdf; FW: GeauxVote; F & Ps; RE: Questions; Notice – telephone contact-rev6-13.pdf; and 2013 SOS PowerPoint mandated voter registration.pdf. (R. Doc. 246-1 at 2-12).

According to the United States, these descriptions are insufficiently specific leaving the United States "unable to determine the subject matter of [] these email communications" or their attachments (R. Doc. 246-1 at 10). The Court agrees.

The challenged entries are not described with sufficient detail for either the Court or the United States to evaluate the applicability of the attorney client privilege or work product doctrine. For example, one entry is merely described as "NVRA." (R. Doc. 243-1 at 391). The NVRA is a federal law that DHH must generally comply with, in addition to being the law at issue in this litigation. Such a description is clearly not specific enough for the United States to discern the applicability of any privilege. The same is true for those entries described as "FW: NVRA Training," "NVRA Reporting," "RE: NVRA Training," "RE: RE: NVRA Training," "NVRA Spreadsheet," "Voter Registration Form," "Final NVRA-2013," "NVRA Documents," "NVRA Clarifications," and the like. (R. Doc. 246-1 at 2-3, 6-7, 9, 10-11). *See U.S. v. Construction Prods. Research, Inc.*, 73 F.3d 464, 473-74 (2d Cir. 1996) (privilege log's description of withheld information — e.g., "Fax Re: DOL Findings," "Fax: Whistleblower article," "Letter Re: Customer Orders," "Re: Five Star Products," "Summary of Enclosures" — did "not provide enough information" to support claim that documents were protected by the attorney client privilege and work product doctrine).

Other descriptions identify certain documents, hinting at their subject matter without providing any clarification as to the items' contents or how they might relate to this litigation — e.g., "WICADM 1020 FFY 2010.pdf," "FW: GeauxVote," "F & Ps," "Notice – telephone contact-rev6-13.pdf," "2013 SOS PowerPoint mandated voter registration.pdf," "Screen shots from PHAME.pdf," and "Voter Registration Form." (R. Doc. 246-1 at 2-3, 6-7, 9, 10-11). Most of the remaining entries are too vague to even discern the subject matter of the items, much less their relation to this case or the applicability of any privilege — e.g., "Training Alert!!," "RE: FYI" and "Questions." (R. Doc. 246-1 at 2-3, 6-7, 9, 10-11).

In several instances, the privilege log includes some, but not all of the senders or recipients[1] of a communication. (DHHpriv001601, DHHpriv001602, DHHpriv001606, DHHpriv001611, DHHpriv001719, DHHpriv001721, DHHpriv001766, DHHpriv000331, DHHpriv013063, DHHpriv001456, DHHpriv001498, DHHpriv001802, DHHpriv005848); (DHHpriv001614) (omitting distribution lists – Medicaid Eligibility Policy Unit; DHH - Medicaid - Eligibility Staff Only); (DHHpriv004154) (omitting 100 recipients, including distribution lists).

This represents a "serious defect" in DHH's privilege log — without the identities and roles of each sender and recipient, there is no way for the United States to determine whether they fall within the scope of the attorney client privilege or work product protection. *See Muro v. Target Corp.*, 250 F.R.D. 350, 364 (N.D. Ill. 2007) (failure to include all recipients was a "serious defect in the privilege log" as it prevented the opposing party from assessing whether the recipient fell "within the sphere of [] privilege").

---

[1] Individuals copied on an email communication are included in the term 'recipients,' as used by the Court. In some of these emails, the privilege log refers to the ultimate sender and recipient of a forwarded email, but not the others in the "chain" of emails. There is no question that the privileged nature of the communication, if any, pertains to the earlier emails in the document or the attachment. Indeed, the forwarded email referenced in the log often has no text or comment at all. The entries on the log are insufficient to discern the applicability of any privilege.

The privilege log likewise fails to sufficiently explain the role of each identified recipient and sender with respect to communications with in-house counsel. While the Court is aware that DHH provided the job titles of the identified senders and recipients to the United States, the log still does not give enough information concerning the role of each individual within DHH, including information that would shed light on the reason for the communication. Many of the communications take place between in-house counsel and DHH employees. While the attorney client privilege can extend to communications between an organization's employees and its in-house counsel, the role of each person involved in that communication is crucial to determining applicability of the privilege. This is because in a corporate or similar setting, "the privilege extends to any employee of the [entity] who, on instructions from a superior, communicates with [in-house] counsel . . . for the purpose of giving or obtaining legal advice or services," but not to communications with counsel made for obtaining "business or technical advice or management decisions." *Sand Storage, LLC v. Trican Well Service, L.P.*, 2015 WL 1976463, at *3 (S.D. Tex. April 30, 2015); *see also Muro*, 250 F.R.D. at 364-65 (simply providing the job title of individuals was insufficient for opponent to discern those individuals' roles within the corporation to assess applicability of the attorney client privilege); *American Nat'l Bank & Trust Co. of Chicago v. Equitable Life Assurance Society of the U.S.*, 406 F.3d 867, 878-79 (7th Cir. 2005) (recognizing that this area of privilege law is "especially difficult, namely, distinguishing in-house counsels' legal advice from their business advice"). Therefore the identity as well as the role of each party to the communications is necessary to determining applicability of the attorney client privilege as to those communications involving in-house counsel.

For these reasons and based on the 40 privilege log entries identified by the United States, which are exemplary of those entries it challenges as deficient, the Court finds DHH's privilege log is deficient under Rule 26 of the Federal Rules of Civil Procedure.

**B.     Privileged Nature of the 40 Withheld Documents**

The Court has the added benefit of being able to review (in-camera) the documents described in the 40 entries at issue, which DHH has withheld under the attorney client privilege and the work product doctrine. The attorney client privilege generally protects confidential communications made by a client to his lawyer for the purpose of obtaining legal advice. *Hodges, Grant & Kaufmann v. United States Gov't*, 768 F.2d 719, 720-21 (5th Cir. 1985). The work product doctrine protects materials prepared in anticipation of litigation that reveal the "mental impressions, conclusions, opinions, or legal theories of an attorney." *Conoco Inc. v. Boh Bros. Construction Co.*, 191 F.R.D. 107, 118 (W.D. La. 1998).

Generally, the withheld documents at issue here consist of: emails scheduling employee training; employee training materials; emails discussing the mandatory reporting of purely factual data; reports compiling purely factual data[2]; emails discussing the implementation of compliance procedures and the logistics of complying with the NVRA; actual NVRA-related forms distributed to the public by DHH; official NVRA-related policies; and seemingly unrelated email communications.

Despite DHH's assertions of privilege, the Court concludes that many of these documents do not fall within the scope of the attorney client privilege or work product doctrine. *U.S. v. El*

---

[2] DHHpriv001765 and DHHpriv001090 are both "National Voter Registration Act Mandatory Voter Registration Agency Quarterly Activity Report[s]." These reports compile data on the total number of: applications for service or assistance, recertification, renewals, and changes of address; declaration forms received; and completed voter registration applications received and forwarded. These forms are prepared by site coordinators and not attorneys. These forms are compilations of purely factual data and there is nothing to indicate how these would fall within the protections of the attorney client or work product privileges.

*Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982) (privilege does not protect "materials assembled in the ordinary course of business, or pursuant to public requirements"); *Solis v. Food Employers Labor Relations Ass'n*, 644 F.3d 221, 232 (4th Cir. 2011) (materials prepared pursuant to regulatory requirements, in the ordinary course of business or for other non-litigation purposes are not protected.); *McCoo v. Denny's, Inc.*, 192 F.R.D. 675, 693-94 (D. Kan. 2000) (the court explained it was "at a loss to even imagine how" any of the requested employer "policies, guidelines, [and] training manuals" would "fall within the scope" of the attorney client privilege or work product doctrine); *Bartram, LLC v. Landmark American Ins. Co.*, No. 10-28, 2011 WL 284448, at *2-3 (N.D. Fla. Jan. 24, 2011) (The requested "presentations and training programs [] are not subject to the work product privilege because the documents were created by Ms. Spence for the purpose of advising Plaintiff and Foram about workers compensation and employment practices liability, and not for any reason or use connected to this litigation."); *Pfizer Inc. v. Ranbaxy Laboratories Ltd.*, No. 03-209, 2004 WL 2323135, at *1-2 (D. Del. Oct. 7, 2004) ("Factual information, technical data, the results of studies, investigations and testing . . . and other factual information is discoverable" and not protect by the attorney client privilege or work product doctrine); *Nat'l Congress for Puerto Rican Rights v. City of New York*, 194 F.R.D. 105, 109 (S.D.N.Y. 2000) ("Given the purely factual nature of the documents in question," which consisted of compilations of data, there can be no "good faith basis" for the assertions of attorney client privilege.).

Moreover, one of the documents in Category 4 is described on the privilege log as the "OBH NVRA Final Signed Policy." This document is a Policy and Procedure Statement outlining DHH Policy No. 0012013, "regarding compliance with the National Voter Registration Act." (DHHpriv000888). The cover page of the Policy and Procedure Statement indicates that

Policy No. 0012013 was "published" by DHH and became effective on April 26, 2013. (DHHpriv000888 at 1). The document also does not indicate that it was created by an attorney for the purpose of rendering legal advice. There is no indication as to whom it was published or how widely it was disseminated, if at all. This "published" policy relating to compliance with a federal law is clearly not protected by either the attorney client privilege or the work product doctrine. *See Giardian v. Ruth U. Fertel, Inc.*, No. 00-1674, 2001 WL 1658183, at *1 (E.D. La. Dec. 21, 2001) ("documents prepared for review by both legal and nonlegal staff are not privileged because the documents cannot be said to have been made for the primary purpose of seeking legal advice"). The following document listed in Category 4 consists of a two-page introductory summary of Policy No. 0012013 attached to a duplicate copy of Policy No. 0012013. (DHHpriv000890).

Among the employee training materials is a "2013 SOS PowerPoint mandated voter registration.pdf." (R. Doc. 243-1 at 221) (DHHpriv000928). As the privilege log indicates, this was prepared and distributed by the Louisiana Secretary of State and pertains to the NVRA. It appears that this document was widely disseminated and prepared for the purpose of training employees on compliance with the NVRA, as opposed to obtaining legal advice or devising a legal strategy for trial.[3] Moreover, there is nothing on the privilege log or in the document to indicate that it was prepared by counsel for, or even an employee of DHH.

Another email summarizes information pertaining to a public records request by a news station. The email specifically states that the content is what was sent to the station. Beyond the fact that information produced in response to a public records request is not privileged, the information does not even appear to be related to the NVRA, much less this litigation.

---

[3] Nonetheless, similar to Policy No. 0012013 (DHHpriv000888), there is no express indication either in the document or on DHH's privilege log as to the degree of dissemination.

(DHHpriv001456). One remaining email between two employees of DHH is titled "NVRA," but appears to inquire about a contract between Xerox Corporation and Long Term Personal Care Services. (DHHpriv001802). The body of the email simply reads: "Should this be added to Xerox-LTPCS total count?" Nothing in this email indicates that its contents are privileged.

Finally, many of the email communications do not involve any attorneys, do not otherwise suggest the presence of any attorney-client relationship, and were not made for the purpose of obtaining legal advice. These emails likewise do not contain the mental impressions or trial strategies of counsel. Rather, they consist of communications between DHH employees made for the purpose of carrying out the Department's day-to-day operations. As such, there is no reasonable basis for DHH to withhold these emails pursuant to the attorney client privilege or the work product doctrine.

The Court is convinced that the overwhelming majority (if not all) of the withheld 40 documents, do not concern the legal advice of counsel as it relates to this litigation or counsel's strategy for trial.

### C. Waiver

Finally, the Court must determine whether the inadequacies of DHH's privilege log and the non-privileged nature of the documents submitted by DHH for review warrant a finding of waiver as to the 13,000-plus documents withheld under the attorney client privilege and work product doctrine.

When confronted with a privilege log that is "technically deficient," a court may impose sanctions, including waiver of the asserted privilege. *Cashman Equipment Corp. v. Rozel Operating Co.*, No. 08-363, 2009 WL 2487984, at *2 (M.D. La. Aug. 11, 2009). However, when a deficient privilege log "does not appear to have been prepared in bad faith," the approach of

most courts "is to allow the party who submitted the log a short opportunity to amend the log prior to imposing the drastic remedy of waiver." *Cashman Equipment Corp.*, 2009 WL 2487984, at *2. This is because waiver "is the most extreme sanction that a court can impose for failure to follow required procedure and courts should reserve it for cases of unjustifiable delay, inexcusable conduct, and bad faith." *Williams v. Taser Intern., Inc.*, 274 F.R.D. 694, 698 (N.D. Ga. 2008); *see also Peacock v. Merrill*, No. 08-01, 2008 WL 687195, at *3 n.9 (M.D. La. March 10, 2008) ("Of relevance to the determination of whether the failure to produce a sufficient privilege log should result in a waiver of the claimed privilege is the nature of the violation, its willfulness or cavalier disregard for the rule's requirements, and the harm which results to other parties.").

As set forth above, a significant number of the privilege log entries are facially insufficient. Given the Court's in camera review of the 40 exemplary documents, the Court finds that DHH acted unreasonably in both preparing the log and asserting its claims of privilege.[4] This is best highlighted by DHH's position regarding a document from Category 2 described as "WIC Chapter 23 3-12-13." (DHHpriv013721). This document, Chapter 23 of the WIC manual, appears to be an update of a version dated April 23, 2012 and focuses on voter registration and the NVRA. (DHHpriv013721). DHH claims that this document is not discoverable pursuant to the attorney client and work product privileges. (R. Doc. 243-2 at 119). It appears that DHH provided multiple versions of this document in discovery during the *Scott* litigation in the

---

[4] Two of the documents are emails which do not contain any text beyond the short descriptions found in their subject lines. (DHHpriv001728) ("Subject: NVRA Quarterly Report 2014Q2"); (DHHpriv000544) ("Subject: Final NVRA-2013"). In other words, nothing is actually written in the body of the emails. Similarly, in other emails the sender simply indicates that a document is attached or asks the recipient to review an attachment. (DHHpriv001733) ("Take a quick look at this to see if you see anything I need to fix. I'm loading this for regions to begin using tomorrow."); (DHHpriv000557) ("Please see the attached NVRA forms our agency, Positive Concepts, uses."); (DHHpriv013063) ("Please see the requested spreadsheet. I apologize for the delay."); (DHHpriv005742) ("Please see attached. Please let me know if you need anything else."). Again, these statements in no way indicate that the communications were made to obtain legal advice or otherwise reveal counsel's legal strategy for trial.

Eastern District of Louisiana as well as introduced it into evidence as DHH Exhibit 15 during the trial. *See* Minute Entry at 128, *Scott v. Schedler*, No. 11-926 (E.D. La. October 17, 2012), ECF No. 417-1 (DHH Exhibit No. 15, WIC Manual, Chapter 23); DHH Opp'n to Mot. in Limine at 1, *Scott v. Schedler*, No. 11-926 (E.D. La. October 11, 2012),[5] ECF No. 401 ("DHH-15 is Chapter 23 of the WIC manual, which concerns voter registration and is dated April 23, 2012."). *See Friends for All Children, Inc. v. Lockheed Aircraft Corp.*, 563 F. Supp. 552, 559 (D.D.C. 1983) ("Schneider . . . cannot claim a . . . privilege for information . . . introduced as evidence during [another] litigation. Schneider's claim that the exhibit, which was introduced into evidence at his trial, violates medical and attorney/client privileges . . . is without foundation. The particular information to which Schneider refers is in the public record.").

The Court therefore finds DHH acted unreasonably in preparing the privilege log and asserting its claims of privilege. Even still, the Court is reluctant to find a complete waiver of privilege as to all of the documents described in DHH's privilege log. This is because the Court has only done an in-camera review of a minimal sampling of the documents being withheld — 40 out of more than 13,000 documents.[6] And while these 40 documents are exemplary of the 4 categories of entries challenged by the United States, the United States has only identified 10

---

[5] DHH argues in opposition to the motion in limine that the revisions were "simply the most up-to-date versions of the same WIC chapter and training power point that had already been provided to Plaintiffs' counsel." (R. Doc. 401 at 3). It is unclear why this same rationale, provided to the district court in the *Scott* case, would not likewise apply to DHHpriv013721.

[6] *See In re Vioxx Products Liability Litigation*, 2006 WL 1726675, at *2-3 (5th Cir. 2006) (Explaining that when presented with a voluminous number of withheld documents, a district court may categorize the documents and then employ a "statistically sound protocol for sampling" withheld documents from each category. In this instance, the 5th Circuit found that randomly sampling 2,000 of the 30,000 withheld documents would be fair.); *American Nat'l Bank Trust Co. of Chicago v. Equitable Assurance Society of the U.S.*, 406 F.3d 867, 878-79 (7th Cir. 2005) (district court abused its discretion by allowing plaintiff to randomly pick 20 out of 400 documents listed on defendants privilege log for in-camera review and then finding waiver as to all 400 documents because 20% or more of the reviewed documents were not privileged); *U.S. v. Bollinger Shipyards, Inc.*, 2015 WL 1638063, at *4 (E.D. La. April 13, 2015) (finding magistrate judge abused discretion by ordering production of entire privilege log without conducting an appropriate in-camera review, and advising that where the volume of documents withheld is too large to allow for a document-by-document review, a court "may employ a statistically sound protocol for sampling withheld documents to determine the validity" of the overall claim of privilege).

contested entries within each of the 4 categories. The Court is therefore unaware of the total amount of entries and documents within each category and can only speculate as to the sufficiency of the representative sample provided of each category.

In addition, shortly after filing the instant Motion, the United States "identified approximately 3,520 entries as to which it does not contest DHH's claim of privilege." (R. Doc. 252). Some of these uncontested entries were actually included in the 40 sample documents identified by the United States. *Compare* (R. Doc. 246-1 at 9) (DHHpriv005568 is identified by the United States as an exemplary entry in Category 3), *with* (R. Doc. 252-1 at 21) (DHHpriv005568 listed as a non-contested privilege log entry by the United States).[7] This supports a conclusion that the privilege log entries are sufficient with respect to certain withheld documents.

DHH is warned, however, that a subsequent finding that the privilege log is deficient, or that any privilege is being asserted unreasonably or in bad faith, may result in a finding of waiver and an order of production as to all documents being withheld.

For these reasons,

The United States shall review the list of non-contested entries and make any revisions, if needed, by **August 5, 2015.**

DHH is **ORDERED** to **reassess** its claims of privilege, in light of this Order, as to all documents it asserts as privileged. **By August 17, 2015**, DHH must notify the United States of any previously contested items as to which DHH **withdraws** its claims of privilege and produce

---

[7] Although other bates numbers are also present in both the Motion to Compel and the list of non-contested privilege log entries, it appears that several of the bates numbers corresponding to these privilege log entries found in the United States' list of uncontested entries are missing one of the digits. In other words, these duplicate entries might simply by typographical errors. The United States is directed to review the entries at pages 2-4 of its list of uncontested entries (R. Doc. 252-1), and confirm that the "Production No." provided corresponds to the particular page and entry on the referenced April 17, 2015 privilege log (R. Doc. 243-1).

those documents; otherwise, DHH must provide the United States with a **supplemental** privilege log containing sufficient information to allow the United States to assess DHH's claims of privilege as to any remaining entries identified by the United States. The non-contested entries contained in the United States' Notice of Filing of Non-Contested Privilege Log Entries (R. Doc. 252-1), and any amended version provided by the United States, need not be supplemented by DHH.

Signed in Baton Rouge, Louisiana, on July 31, 2015.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**