UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| UNITED STATES OF AMERICA | CIVIL ACTION |
|---|---|
| VERSUS | NO. 11-470-JWD-RLB |
| STATE OF LOUISIANA AND LOUISIANA DEPARTMENT OF HEALTH AND HOSPITALS, et al. | |

# RULING AND ORDER ON UNITED STATES' MOTION TO COMPEL

Before the Court is the United States' supplemental Motion to Compel the Production of Documents Asserted to be Privileged (R. Doc. 248) by Defendants, the Louisiana Department of Health and Hospitals (DHH) and the Louisiana Department of Children and Family Services (DCFS). In its Motion, the U.S. objects to 6 documents withheld by DHH and DCFS as protected by either the work product doctrine, joint defense/common interest privilege or the deliberative process privilege. The U.S. filed the disputed documents under seal. (Defs.' Sealed Exhs. 1-6, R. Docs. 249-1 – 249-6). Defendants, DHH and DCFS, filed an Opposition in response to the U.S.'s Motion. (R. Doc. 254). For the reasons given below, the United States' Motion to Compel is **DENIED**.

## I. APPLICABLE LAW

Rule 26(b)(1) of the Federal Rules of Civil Procedure allows a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." A relevant discovery request seeks information that is "either admissible or is reasonably calculated to lead to the discovery of admissible evidence." *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*,

894 F.2d 1482, 1484 (5th Cir. 1990) (quoting Fed. R. Civ. P. 26(b)(1)). Nonetheless, a party may withhold otherwise discoverable information on the basis of privilege. Fed. R. Civ. P. 26(b)(1). Here, Defendants have asserted two privileges in withholding documents in discovery: the work-product doctrine and the deliberative process privilege.

### A. Work Product Doctrine

Rule 26(b)(3) of the Federal Rules of Civil Procedure restricts a party's ability to obtain work product from an opponent during discovery. Work product consists of "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). The work product protection is broader in scope and reach than the attorney client privilege.[1] The attorney client privilege "extends only to client communications, while the work product protection encompasses much that has its source outside client communications." *Stoffels v. SBC Communications, Inc.*, 263 F.R.D. 406, 412 (S.D. Tex. 2009).

Work product protections "are held by both the attorney as well as the client" and may be asserted and waived by either. *In re Grand Jury Subpoenas*, 561 F.3d 408, 411 (5th Cir. 2009). Rule 26(b)(3) distinguishes between "ordinary" and "opinion" work product. The party seeking disclosure of opinion work product is subject to a higher burden because opinion work product reveals the "mental impressions, conclusions, opinions, or legal theories of an attorney." *Conoco Inc.*, 191 F.R.D. at 118 (quotations omitted).

---

[1] The Fifth Circuit also recognizes a "common legal interest" or "joint defense" privilege. *In re Santa Fe Int'l Corp*, 272 F.3d 705, 710 (5th Cir. 2001). This is not an independent privilege, but is instead an extension of the underlying privilege. Communications protected under the common legal interest extension include communications between co-parties in actual litigation and their counsel, and communications between potential co-parties and their counsel. *Id*.

### B. Deliberative Process Privilege

The deliberative process privilege protects documents reflecting "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies" are made. *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975); *see also Branch v. Phillips Petroleum Co.*, 638 F.2d 873, 881 (5th Cir. 1981). To be clear, the "opinions and interpretations" embodying the agency's "effective law and policy" fall outside the scope of the deliberative process privilege. *N.L.R.B.*, 421 U.S. at 153. However, documents reflecting the agency's "group thinking in the process of working out its policy and determining what its law shall be" are protected by the deliberative process privilege. *Id.*

## II. DISCUSSION

The current discovery dispute involves a series of emails that were all generated in 2013 and involve communications, in some part, by attorneys. This litigation has been pending since July of 2011. Some of the issues presented in this case concern the *Scott* litigation in the Eastern District of Louisiana, which is referenced in some of the disputed emails. *Scott v. Schedler*, No. 11-926 (E.D. La. Filed April 19, 2011). As an initial matter, the Court notes that the result of the *Scott* litigation and, in particular, its potential effect on this matter is currently disputed by the parties and has been in dispute at all times relevant to this Order. (R. Docs. 208, 220, 230, 238, 260). The United States in this matter provided a Notice of Related Action the day after filing the Complaint, noting the similarity of the allegations and defendants in both actions. (R. Doc. 2). In addition, to the extent any emails at issue involve correspondence between DHH, DCFS and the Secretary of State, the Court finds that in all respects these emails are between persons or entities sharing a common legal interest and that those communications were exchanged in confidence for the limited purpose of assisting in their common cause.

Exhibit Nos. 1 and 4 consist of email communications between DHH's in-house trial counsel, Rebecca Clement, and the Secretary of State's in-house counsel and NVRA coordinator, Lani Durio. (R. Docs. 249-1 and 249-4). Defendants contend that the emails are privileged because they reveal counsel's position on a legal issue before the Court.

Ms. Clement has been a counsel of record in this matter since March of 2012. In her July 10, 2013 email to Ms. Durio, Ms. Clement indicates her "current position" on a legal issue to which "there has been no Court ruling." (R. Doc. 249-1 at 3). The content of the email not only discusses an unresolved legal issue, but also explains that DHH's position on that issue has been challenged by the United States. In a later email, Ms. Clement provides the legal authority on which she bases her position. (Exh. No. 4, R. Doc. 249-4 at 1). The Court agrees with Defendants' that these emails fall under the work product doctrine, as the emails contain "DHH in-house counsel's mental impressions about legal theories/strategies/positions of DHH in connection with this litigation." (R. Doc. 254 at 6).

The email correspondence outlines, in part, Ms. Clement's position in this litigation. (R. Doc. 174). The United States has not shown any substantial need for this material. The Court also notes that the portions of Exhibit No. 1 that relate exclusively to the logistics of complying with the NVRA and the Secretary of State's rules were disclosed. The United States' Motion to Compel the production of the emails contained in Exhibit Nos. 1 and 4 is, therefore, denied.

Defendants claim that Exhibit Nos. 3 and 5 are protected from disclosure by the deliberative process privilege.[2] Specifically, Defendants argue that the emails relate to "DHH's processes prior to adopting/revising its NVRA-related policies and procedures in conformity with the [Secretary of State's] rules." (R. Doc. 254 at 7, 8). For a document to fall under the

---

[2] Defendants also take the position that Exhibit Nos. 3 and 5 are additionally protected under the work product doctrine.

deliberative process privilege it must be both "pre-decisional and deliberative." *Pacific Gas & Electric Co. v. U.S.*, 70 Fed. Cl. 128, 133 (2006). Information is considered pre-decisional if it precedes the agency's ultimate decision and reflects "the personal opinions of the writer rather than the policy of the agency." *Coastal States Gas Corp. v. Dep't of Energy*, 627 F.2d 854, 866 (D.C. Cir. 1980); *see also Janvey v. Adams & Reese, LLP*, 2015 WL 2453730, at *3 (M.D. La. May 22, 2015) (same). "To be deliberative, a document must reflect the give-and-take of the consultative process . . . ." *Pacific Gas & Electric Co.*, 70 Fed. Cl. at 134.

Exhibit No. 3 is an email authored by Lani Durio, SOS NVRA coordinator and in-house counsel, and addressed to DHH in-house counsel and another non-attorney employee of DHH. (R. Doc. 249-3). In the email, Ms. Durio is informing DHH of her belief that a particular course of action "may be insufficient" as "a means of discharging voter registration under the NVRA" and recommends an alternative course of action for DHH to undertake.

Exhibit No. 5 is comprised of two e-mails, sent between DHH in-house counsel and Ms. Durio, regarding the treatment of certain "declaration forms," which are provided to applicants along with the application for disability services. (R. Doc. 249-5). The email correspondence specifically relays concerns expressed by DHH "staff and litigating lawyers" about whether certain procedures would run afoul of a certification made to the court. Likewise, the email response from Ms. Durio contains what appear to be the subjective opinions of its author, provided as guidance for DHH to consider in formulating future policies or procedures.

This Court finds that the communications in Exhibit Nos. 3 and 5 are protected by the deliberative process privilege. They are pre-decisional and reflect the give and take of the decision making process of DHH and the subjective opinions of not only the author of the

email(s), but with respect to Exhibit 5, those of trial counsel during the pendency of this action ("litigating lawyers").

Defendants assert that Exhibit Nos. 2, 3, 5 and 6 are likewise protected from disclosure by the work product doctrine. These emails contain communications between DHH and SOS attorneys and non-attorney employees regarding their obligations under the NVRA following the *Scott* litigation. Some of the correspondence is by and between counsel of record in the instant litigation. The United States urges the Court to adopt a view that these emails relate to Defendants' "obligation to comply with the NVRA" and that neither this litigation nor the *Scott* litigation created that obligation. (R. Doc. 248-4 at 7). Thus, the United States' position is that "communications about complying with either the requirements of the NVRA Rule or the NVRA itself would have occurred irrespective of this litigation and are not protected work product." (R. Doc. 248-4 at 7).

Defendants suggest the emails contain counsels' opinions, analyses, interpretations and/or thought processes "specifically regarding their agency-clients' legal positions in this litigation as well as their compliance with a court order in the concluded (but still binding) related litigation in *Scott*." (R. Doc. 254 at 2). Defendants argue that the "inevitable conclusion is that they not only relate to litigation but they constitute opinion work product." (R. Doc. 254 at 1-2).

The work product "doctrine is not an umbrella that shades all materials prepared by a lawyer, or agent of the client." *ReedHycalog UK, Ltd. v. Baker Hughes Oilfield Operations Inc.*, 242 F.R.D. 357, 360 (E.D. Tex. 2007). Instead, it only protects those documents prepared in anticipation of litigation that reveal counsel's "legal theories and mental impressions regarding strategy in preparation for trial." *Rainbow Investors Grp., Inc. v. Fuji Trucolor Missouri, Inc.*,

168 F.R.D. 34, 37 (W.D. La. 1996); *see also Teleplus, Inc. v. Avantel, S.A.*, 2003 WL 23282491, at *2 (W.D. Tex. April 9, 2003) ("The federal work product doctrine protects trial preparation materials that reveal strategy, evaluation of strengths and weaknesses of a case, and inferences drawn from interviews."). "It is admittedly difficult to reduce to a neat general formula the relationship between preparation of a document and possible litigation necessary to trigger the protection of the work product doctrine." *U.S. v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981). Put simply, for a document to qualify as work product, "the primary motivating purpose" of the document must be to aid in litigation. *Davis*, 636 F.2d at 1040.

In Exhibit No. 2, DHH counsel, Rebecca Clement, is seeking guidance from the SOS's NVRA coordinator, Lani Durio, on whether DHH's particular use of a website link and distribution of voter registration applications would comply with the NVRA. (R. Doc. 249-2). Exhibit No. 3 concerns the same subject matter, but more specifically, in light of the ruling and Permanent Injunction issued by the district court in *Scott v. Schedler*. (R. Doc. 249-3). Exhibit No. 5, as referenced above, is an email from DHH counsel raising concerns about the legal integrity of an SOS policy designed to bring the agencies into compliance with the NVRA, in light of a certification made to the court. (R. Doc. 249-5). The email correspondence specifically identifies the source of these concerns as "staff and litigating lawyers." Finally, Exhibit No. 6 concerns email communications between counsel of record for both DHH and SOS in the *Scott* litigation and in this litigation. (R. Doc. 249-6). The emails contain attachments that were "developed by the Secretary of State in an attempt to comply with the Permanent Injunction issued in *Scott v. Schedler*." (R. Doc. 249-6).[3]

---

[3] The Court makes no finding as to the discoverability of the attachment or any other actual procedures or policies that have been put in place for purposes of NVRA compliance.

Exhibit Nos. 2 and 3 pertain to counsels' legal interpretations of the binding injunction in *Scott* and certain aspects of the NVRA. The emails are dated in October and November of 2013 between attorneys, at least one of whom is counsel of record in the current litigation. There is no question that the interpretations of *Scott* and its implications are closely related to this case (as asserted in the preclusion briefs filed in this proceeding (R. Docs. 184, 185, 189, 220, 230, 238)). These emails go beyond the recitation of established policies or the logistics of implementing those policies to comply with the NVRA in the context of that decision. *Cf. U.S. v. Louisiana*, No. 11-470, 2015 WL 4619561, at *5 (M.D. La. July 31, 2015) (emails discussing the logistics of implementing NVRA-compliance policies were not privileged in nature). Rather, they involve communications by and between attorneys during the pendency of this litigation interpreting the recent result in *Scott* and the requirements imposed by the NVRA. Although the emails do not specifically reference the current litigation, the emails call upon counsels' impressions and opinions regarding matters at issue in this litigation.

Exhibit No. 5 relays concerns expressed by trial counsel concerning the legal integrity of certain procedures, as well as, the effects (and presumably the consequences) of employing them, in light of an earlier certification made to the court. The Court concludes that Exhibit No. 5 constitutes work product as the primary purpose of that email was to express the legal interpretations and the concerns of trial counsel in connection with litigation.

Finally, Exhibit No. 6 also concerns compliance with the injunction issued in *Scott*, and particularly illustrates the relation between the *Scott* case, which was concluded at that time, and the current litigation, which was already pending. The emails, dated March of 2013, are sent exclusively to attorneys. Many of the 16 attorneys involved are outside trial counsel in both this and the *Scott* litigation and 14 are listed as counsel of record in this case. Aside from the

participation of trial counsel, the substance of the communication convinces the Court that it constitutes attorney work product as it relays the legal opinions of counsel and his client in connection with existing litigation. Specifically, trial counsel for one agency expresses his client's legal position on the scope of another agency's jurisdiction, in the context of compliance with the *Scott* Injunction.

Because the email communications in Exhibit Nos. 2, 3, 5 and 6 contain either counsels' legal interpretations or their clients' positions with respect to issues pending in this litigation, the Court finds they are protected from disclosure by the work product doctrine.

As a final matter, Defendants broadly suggest that any emails responsive to discovery, which reference the *Scott* litigation or the Permanent Injunction issued in *Scott*, constitute work product and remain protected in this subsequent litigation. *See F.T.C. v. Grolier Inc.*, 462 U.S. 19, 25 (1983) (under Rule 26, work product "protects materials prepared for *any* litigation or trial as long as they were prepared by or for a party to the subsequent litigation"). The Court acknowledges that it found the specific emails at issue here, including those referring to the *Scott* litigation, qualified as work product. However, the Court does not find that any (or every) email or document referencing the *Scott* decision or compliance with the NVRA during the pendency of this action is necessarily privileged. Counsel should carefully evaluate the assertion of privilege as it pertains to communications regarding a completed litigation.

## III. CONCLUSION

For the reasons given above, the United States' Supplemental Motion to Compel (R. Doc. 248) is **DENIED**.

Signed in Baton Rouge, Louisiana, on August 20, 2015.

_____
  **RICHARD L. BOURGEOIS, JR.**
  **UNITED STATES MAGISTRATE JUDGE**