UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

    v.	Civil Action No. 3:11-CV-00470
                                                                                     JWD-RLB

STATE OF LOUISIANA, et al.

<u>MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT BY DEFENDANT, J. THOMAS SCHEDLER</u>

MAY IT PLEASE THE COURT:

      J. Thomas Schedler, in his official capacity as Louisiana Secretary of State (Schedler), filed a partial motion for summary judgment on what he believes is the only viable issue before the court -- whether the NVRA agency registration provisions extend to so called "remote" transactions with "mandatory" voter registration agencies designated pursuant to Section 7 of the Act (52 U.S.C. 20506).  This memorandum is submitted in support of the summary judgment motion.

1

**TABLE OF CONTENTS**

I.   PROCEDURAL CONTEXT FOR PARTIAL SUMMARY
     JUDGMENT ISSUE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.  STATEMENT OF ISSUES PRESENTED FOR DECISION. . . . . . . . . . . . . . . . . . . . . . . 4

III. STANDARD FOR SUMMARY JUDGMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

IV.  INTRODUCTORY STATEMENT REGARDING NVRA
     AGENCY REGISTRATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

V.   IN PERSON VERSUS REMOTE TRANSACTIONS UNDER
     THE EXPRESS TERMS OF THE NVRA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

     A.  Enactment of the National Voter Registration Act of 1993.. . . . . . . . . . . . . . . . . . 7

     B.  NVRA Provisions Defining Transactions Covered by
         the Act. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

     C.  The Very Structure of the Act Makes It Clear that the
         Agency Registration Provisions Are for In Person
         Transactions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

     D.  The Procedures That Congress Put In Place for Public
         Assistance and Disability Services Offices Contemplate
         an In Person, Face to Face Transaction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

     E.  Rewriting a Statute is a Job for the Congress, Not
         the Courts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

I.     PROCEDURAL CONTEXT FOR PARTIAL SUMMARY JUDGMENT ISSUE

On July 12, 2011 the United States as plaintiff filed this action for declaratory and injunctive relief against the State of Louisiana and several state agencies alleging that the defendants failed to comply with Section 7 of the National Voter Registration Act (NVRA) 52 U.S.C. 20501, *et. seq*. The United States claimed generally that the defendant agencies failed to offer voter registration services on all occasions and in the manner required by Section 7 of the NVRA (52 U.S.C. 20506). Named as defendants were the Louisiana Department of Health and Hospitals (DHH) and the Louisiana Department of Children and Family Services (DCFS) through their agency heads, J. Thomas Schedler as Louisiana Secretary of State and Chief Elections Official of the State, and the State of Louisiana.

In its Complaint the United States pled that prior to July 12, 2011, the defendants' NVRA voter registration practices and procedures were in violation of the Act's agency registration provisions with respect to offices that provide public assistance and offices primarily engaged in providing State funded disability services. The public assistance and disability services agencies and offices are referred to for convenience as "mandatory" voter registration agencies because 52 U.S.C. 20506(a)(1),(2) mandates their designation as voter registration agencies,[1] whereas other agencies and offices, referred to as "optional" agencies, are subject to designation as voter registration agencies at the State's discretion under §20506(a)(3).

Already pending at the time the United States filed suit was a companion case brought in the Eastern District by a group of private plaintiffs alleging the same NVRA violations in Louisiana with

---

[1] Louisiana designated the "mandatory" agencies as such in La.R.S. 18:116(A)(1)(a),(b).

respect to public assistance offices only.[2] Because the NVRA assigns the same voter registration responsibilities (offering the opportunity to register to vote along with applications relating to benefits and services offered by the agencies) to public assistance offices and offices primarily engaged in providing disability services, the issues raised in the two cases are essentially the same.

Among the issues common to the *Scott* litigation and the case before this court is a claim that NVRA voter registration procedures extend to "remote" transactions for benefits and services, nowhere mentioned in the Act, as well as for "in person" transactions at agency offices, expressly prescribed as covered transactions under the Act. The *Scott* case proceeded to decision in the district court and went up to the Fifth Circuit on appeal by Schedler. However, the Fifth Circuit left the in person versus remote issue undecided holding that the private plaintiffs lacked standing to make the claim and the district court lacked jurisdiction to decide it.

The United States revived the remote transaction question in this case by asserting in its discovery responses that Schedler's failure to acknowledge NVRA coverage for remote transactions constituted a discrete violation of the NVRA. See, Exhibit 1 at p. 6 of 24. Schedler, indeed, contends that the Act, according to its express terms and by its very structure, applies only to in person transactions at agency offices. Thus, the issue is ripe for resolution by this court and susceptible of decision as a matter of law on summary judgment.

II.     STATEMENT OF ISSUES PRESENTED FOR DECISION

The summary judgment presents the following issues for decision:

1.     Do the agency registration provisions of Sections 4(a)(3) and Section 7 of the NVRA

---

[2]See, *Scott v. Schedler, et al*, CA No. 11-926 in the district court, No. 13-30185 in the 5th Circuit, the 5th Circuit decision reported at 771 F.3d 831 (5th Cir. 2014).

>    apply to "remote" transactions at mandatory voter registration agencies?

2. Can the courts amend an Act of Congress under the guise of interpretation?

III. <u>STANDARD FOR SUMMARY JUDGMENT</u>

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Proc. Rule 56(C); *Celotex Corp. v. Garrett*, 477 U.S. 317, 324 (1986).

Fed. R. Civ. Proc. Rule 56(a), following its 2010 amendment, provides that a party may move for summary judgment identifying each claim or defense or the part of each claim or defense on which summary judgment is sought. The Notes of the Advisory Committee on the 2010 amendments to Rule 56 note that the first sentence of subdivision (a) was added to make clear that summary judgment may be requested not only to an entire case but also to a claim, defense or part of a claim or defense, the latter being referred to as partial summary judgment.

Summary judgment <u>shall</u> be granted where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Thus, when the standard for granting summary judgment is met, the court must grant the summary judgment under the amended Rule.

Schedler submits that no material fact is in dispute as to whether the NVRA applies to remote applications via telephone, on-line, or by mail with public assistance or disability services offices. Rather, NVRA agency registration requirements are limited to in-person applications at such designated voter registration offices. Schedler submits that he is entitled to judgment as a matter of law on that part of the United States' claim that seeks to extend the agency registration provisions to "remote" transactions.

IV.     INTRODUCTORY STATEMENT REGARDING NVRA AGENCY REGISTRATION

The National Voter Registration Act of 1993 (NVRA) was enacted by Congress on May 20, 1993 and made effective for the State of Louisiana January 1, 1995.  Because voter registration is conducted by the states, the NVRA mandated that states establish registration procedures in addition to the registration procedures in place when the Act was passed.  52 U.S.C. 20503(a).

The Act set up three primary programs aimed at increasing the number of registered voters for federal elections - - the first commonly known as "motor voter" requiring registration simultaneously with a driver's license application; the second called "mail registration" providing for registration by mailing a completed voter registration form to the Parish Registrar of Voters; and the third referred to as "agency registration" under Section 7 of the Act.  52 U.S.C. 20503(a).

The "agency registration" provisions of the Act require the states to designate certain agencies as voter registration agencies.  52 U.S.C. 20503(a)(3)(B) and 20506(a).  The designated agencies have three basic obligations.  They must distribute voter registration applications to their clients, assist in the completion of the voter registration applications, and collect and forward the completed voter registration applications to Parish Registrars.  52 U.S.C. 20506(a)(4) and (6).

For agencies and offices that administer public assistance or are primarily engaged in providing state-funded disability services, the above voter registration services must be offered at the same time certain prescribed transactions are conducted by the client at the agency office.  The agencies must offer voter registration services along with each application for service or assistance and along with each of the agency's recertification, renewal and change of address forms.  52 U.S.C. 20506(a)(6)(A).  The client can decline the opportunity to register to vote by use of a form called the declaration form.  The declaration form content is statutorily prescribed and the declaration form

must be given out to clients with the agency forms. 52 U.S.C. 20506(a)(6)(B).

V.     IN PERSON VERSUS REMOTE TRANSACTIONS UNDER THE EXPRESS TERMS OF THE NVRA

Clear, unambiguous terms of a statute should not be disregarded under the guise of statutory interpretation. Congress defined the scope of the agency provisions of the NVRA to include **in person** applications **at** offices designated as voter registration agencies under Section 7. The provisions of 52 U.S.C. 20503(a)(3) expressly limit the coverage of the agency provisions of the NVRA to "application **in person**...**at** federal, state or nongovernmental office designated under Section 7." Expansion of the Act to cover so-called "remote" agency transactions (those conducted by mail, telephone, and online) lies exclusively within the province of Congress, and such an amendment should not be undertaken by the courts under the guise of statutory interpretation.

      A.     Enactment of the National Voter Registration Act of 1993

The NVRA was enacted by Congress in 1993 to establish procedures designed to increase the number of eligible voters in federal elections while protecting the integrity of the electoral process. Prior to the NVRA, voter registration occurred primarily at traditional voter registration offices, Parish Registrar of Voters offices in Louisiana. The Act was meant to broaden registration opportunities by offering registration at offices frequently used by persons who might not otherwise register at a registrar's office.

With the objective of expanding opportunity to register, the NVRA mandated that each state adopt, in addition to its existing voter registration methods, procedures to register to vote in federal elections. The registration mandates under the NVRA required states to enact procedures for voter registration in three areas - - (1) application simultaneously with driver's license application, (2) mail

application, and (3) application **in person** at traditional voter registration sites and at federal, state or non-governmental offices designated under Section 7 of the Act. See, 52 U.S.C. 20503. With respect to applications at offices designated under Section 7 of the Act, Congress expressly and explicitly mandated that voter registration services be offered for applications made **in person** at the designated agencies.

The NVRA is rare among Congressional acts for its specificity. The Act is couched in particular, concrete terms, at times in excruciating detail, not unlike an instruction manual. It leaves little room for expansive interpretation as to its meaning and intent.

B. NVRA Provisions Defining Transactions Covered by the Act

The interpretation of a statute or law begins with the express language of the statute. In a statutory construction case, the beginning point must be the language of the statute, and when a statute speaks with clarity to an issue, judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance, is finished. *Cowart v. Nicklos Drilling Co.*, 112 S.Ct. 2589 (1992); *First American Bank v. Resolution Trust Corporation*, 30 F.3d 644 (5th Cir. 1994). In that regard, the NVRA speaks in clear, unambiguous terms with respect to in person applications at public assistance and disability services offices. 52 U.S.C. 20503(a)(3) mandates the adoption of procedures for voter registration in elections for Federal office "by application **in person**" at public assistance and disability services offices designated as voter registration agencies pursuant to § 20506.

The term, "by application **in person**" is clear and free from any ambiguity. In fact, the plain language of the Act requires voter registration procedures for in person transactions at public assistance and disability services offices in such clear terms that only an active imagination could enlarge Congress' express meaning to reach other kinds of transactions. "The plain, obvious and

8

rational meaning of a statute is always to be preferred to any curious, narrow, hidden sense that nothing but the exigency of a hard case and the ingenuity of an acute and powerful intellect would discover." *Lynch v. Alworth-Stephens Co.*, 267 U.S. 364, 370 (1925).

Congress' use of "in person" in defining the kind of applications covered by the NVRA is not mere surplusage. It is used to delineate a distinct category of transactions covered by the Act, namely applications in-person at designated offices. In interpreting statutes, "we must read the statute as a whole, so as to give effect to each of its provisions without rendering any language superfluous." *Tanuja Sahai Guil Waggoner v. Alberto R. Gonzales*, 488 F.3d 632 (5th Cir. 2007).

By its express terms, the NVRA applies to **in person** applications at public assistance and disability services offices. The Act clearly says so.

> §20503. National procedures for voter registration for elections for federal office
> (a) . . . each state shall establish procedures to register to vote in elections for federal office.
> \* \* \*
> (3) by application **in person**
> \* \* \*
> (B) **At** a federal, state, or non governmental office designated under section 20506 of this title.

House Report 103-9 (103 H. Rpt. 9) made it clear that Section 4(a) of the Act (52 U.S.C. 20503(a)) requires States to adopt procedures for registration for federal elections in three areas, (1) simultaneously with an application for a drivers license; (2) by mail application; and (3) by application **in person**, either at an appropriate registration office or at a Federal, State or private sector location (called "agency registration" in the House Report).

With respect to "agency registration", the House Report states at p. 4:

> "Section 4(a) requires that States, in addition to any other methods for voter registration provided for under State law, establish procedures to permit voter

9

registration in elections for Federal office: simultaneously with an application for a drivers license; by mail application; by application **in person**, either at an appropriate registration office, or at a Federal, State or private sector location ('agency registration')". [emphasis supplied]

The so-called "remote" transactions, on the other hand, are nowhere prescribed in the Act and would have to be inserted into the Act by force of judicial interpretation, not by a reading of the Act as written by Congress.

Moreover, Schedler suggests that the voter registration services mandated in §20506(a)(6) contemplate a transaction that is conducted **at** an agency office. §20506(a)(4)(A) states that the services prescribed in the statute are to be provided "**At** each voter registration agency . . .". "At", in its ordinary meaning, denotes a physical location or place. As used in the context of the NVRA registration provisions, it ties services to a particular place. It is not a random term. Had Congress meant for the agency registration provisions of the NVRA to apply to remote applications, by telephone, on-line, mail, or other means, it certainly would have chosen other terms to make its mandate clear.

The only exception to providing services **at** the voter registration agency is found in §20506(a)(4)(B) requiring that voter registration be offered **at** the home of a person with a disability if disability services are offered at the home. Again, the Act is structured to provide for in-person, face-to-face transactions. The at home provision would be entirely superfluous if the Act already applied to **all** applications by an agency whether remote or in person. Congress would have had no reason to speak to a particular category of applications (at a person's home) if the statute already covered all applications.

The Act's provisions relating to public assistance and disability services offices consistently

10

employ "at" to refer to the place where applications are to take place. Again, §20503(a)(3) refers to applications **in-person** (A) **at** the appropriate state law voter registration office, or (B) **at** a federal, state, or non-governmental office designated under §20506. When a statute speaks with clarity to an issue, judicial inquiry into the statute's meaning in all but the most extraordinary circumstances is finished. The courts only resort to the rule of lenity and legislative history if the text of a statute is opaque or ambiguous. *Administaf Companies, Inc. v. New York Joint Board*, 337 F.3d 454 (5th Cir. 2003).

    C.    The Very Structure of the Act Makes It Clear that the Agency Registration Provisions Are for In Person Transactions

Even were the language of the Act not so explicit, the structure of the NVRA makes Congress' design clear with respect to transactions and activities requiring voter registration by the designated agencies. In Section 4 (§20503(a)), Congress mandated that states adopt procedures for voter registration is three areas - - simultaneously with drivers license applications, by mail, and for **in person** applications at designated state and federal agencies. Those sections of the Act that follow Section 4 - - Section 5 (drivers license applications), Section 6 (registration by mail) and Section 7 (**in person** applications at designated agencies) - - do not expand the covered transactions defined in Section 4. Rather, Section 5, Section 6 and Section 7 detail procedures to be utilized with each kind of registration defined in Section 4. The structure of the Act is plain and obvious in that regard, but to the extent that further explanation is required, the House Report, cited above, makes it abundantly clear that "agency registration" applies to **in person** applications at the mandatory agencies.

Any other construction of the Act disregards its architecture. The statute begins by defining

11

which transactions are covered by the Act. The first category of covered transactions under §20503(a)(l) is for registration simultaneously with an application for a driver's license. §20504 then spells out the specific procedures for driver's license registration. The second category of covered transaction in §20503(a)(2) is for voter registration by mail application. In parallel, §20505 spells out the requirements for mail registration. The third category in §20503(a)(3) is for application **in person** at certain sites and offices. Just as the §20504 and §20505 of the Act define procedures for motor vehicle and mail registration, §20506 details how applications **in person** at designated offices should occur.

It borders on the absurd to say that Section 7 (§20506) extends covered transactions beyond the **in person** transactions defined in §20503 for which the adoption of procedures is required. Such a construction of the statute would require the states to establish registration procedures for in person transactions by mandate of §20503(a), yet adopt no procedures at all for "remote" transactions. Such an anomalous construction of the statute demonstrates the kind of interpretive gymnastics necessary to incorporate remote transactions into an Act of Congress that makes no mention of such transactions. "The plain, obvious and rational meaning of a statute is always to be preferred to any curious, narrow, hidden sense that nothing but the exigency of a hard case and the ingenuity of an acute and powerful intellect would discover." *Lynch v. Alworth-Stephens Co.*, 267 U.S. 364, 370 (1925).

Yet, the United States would commend such an anomalous construction to the court. Its argument seizes on §20506(a)(6) and uses that provision as an exegetical fulcrum to construe the Act as a whole. §20506(a)(6) requires that designated voter registration agencies that provide service or assistance in addition to voter registration services distribute voter registration forms along with

12

their service or benefit application forms.  Reading that provision in isolation, the United States reasons that the NVRA must extend to "remote" transactions if the agency's service or benefits application form is provided by remote means.  That is, the terms of the NVRA must extend to "remote" applications if remote applications are used by the agency for its other services.  But, the United States construction disregards prior provisions of the Act, namely §20503(a)(3), and the structure of the Act itself.

It is §20503 that defines the kinds of transactions covered by the NVRA, and the rest of the Act details how voter registration services are to be offered for those covered transactions.  Reading §20506 in isolation to extend the agency NVRA obligations to remote transactions turns interpretation of the Act on its head.  The Act must be read as a whole to include §20503(a)(3) as defining those agency transactions to which the procedures spelled out in §20506 apply, i.e., in person transactions at agency offices.  In interpreting statutes, "we must read the statute as a whole, so as to give effect to each of its provisions without rendering any language superfluous."  *Tanuja Sahai Guil Waggoner v. Alberto R. Gonzales*, 488 F.3d 632 (5th Cir. 2007).  Provisions of a statute are not to be interpreted in isolation but are to be construed with the other provisions of the statute and read as a whole.  *Kaluom v. Stolt Offshore, Inc.*, 504 F.3d 511, 517 (5th Cir. 2007).

D. The Procedures That Congress Put In Place for Public Assistance and Disability Services Offices Contemplate an In Person, Face to Face Transaction

Walking through the procedures required for mandatory voter registration agencies in §20506(a)(6) to consider how they work in practice makes it clear that the procedures contemplate an in person, face to face transaction.

For example, §20506(a)(6)(B) prescribes the form, referred to in Louisiana as a declaration

13

form, designed to serve as the "writing" by which an applicant can decline the opportunity to register. §20506(a)(6)(B).  See, Exhibit 2.

The required declaration question, expressly mandated by §20506(a)(6)(B)(i), is,

"If you are not registered to vote where you live now, would you like to apply to register to vote **here today**?"

The declaration question asks the potential applicant if you want to register **"here today"**. The use of "here today" implies a temporal and physical component to the voter registration option. The transaction contemplated by the statute is an "in person" transaction at an agency office when the applicant is present at the office.

The statutorily required declaration form is unworkable with remote transactions because the language contained on it has no meaning to an applicant completing an application by mail, telephone or online at some other time and some other place.  The declaration becomes nonsensical in the context of remote applications.  The applicant is not "here today" so what can he or she make of the question - - and what does the agency make of the applicant's answer?

Applying agency registration provisions to anything other than "in person" applications would render the declaration form meaningless.  The declaration question, "would you like to register to voter here today?" on a telephone application does not make sense in the context of a remote transaction.  Yet the NVRA expressly mandates that question, in those terms.

And how would the remote applicant decline "in writing" in response to the voter registration question by telephone or online?  If the voter received a declaration form and checked the box declining to register "here today", what would the declaration mean by the time the return mail arrived back to the agency?  It is evident from the declaration question, "would you like to register

14

to vote here today?", that Congress never contemplated that the agency registration provisions of the NVRA would be applicable to anything other than "in person" applications at agency offices - - a particular locale, *i.e.*, an agency office or an applicant's home, at a particular time, *i.e.*, the day that the application for services or benefits is being completed.

Apart from the fact that the "here today" choice makes no sense, the form cannot be marked or signed by the applicant over the phone, by mail, or online. For the provisions of the Act to work, the applicant, the agency staff member, and the forms have to be in the same room.

The agency registration provisions in §20506(a)(4)(A)(ii) also mandate that agencies provide assistance to the applicant in completing the voter application forms unless the applicant declines assistance. How does the agency assist the applicant in completing the form, say in a mail transaction? Does the agency give a phone number with no guarantee that an overworked and understaffed agency will answer the call timely? Does the agency put out a recorded message with standard instructions for completing the form but without any opportunity for the applicant to speak to a person and ask questions about the voter registration option? This failure to offer assistance with voter registration unless declined would constitute a violation of the assistance obligation that cannot be addressed in remote transactions.

The same is true for online transactions. Can the agency have staff available to assist applicants around the clock if the applicant accesses the agency website to register outside office hours? The assistance obligation mandated by §20506 is not something that can be accomplished in a computer transaction. Again, does the agency give a phone number that may or may not be answered while the applicant is online trying to fill out the application form?

Moreover, in person transactions in which an applicant and an agency representative have

15

a face to face exchange are inherently different from remote transactions. The difference is explained in another context in an excerpt from a recent interview with Charles Simonyi, a leading software developer, on the difficulty in developing software.[3]

> "Today, most of the information we exchange is expressed in English. There's nothing wrong with English as one form of expression. The problem with English is that it has been shaped by evolution to work between human beings, and mostly in a face-to-face or a conversational sense. You know how difficult it is to write and be clear when you are not in a conversation, like you and I are right now. If I were to mumble or say something ambiguous, we could resolve it with a question and an answer. When you are writing, you don't have that luxury of interaction with your reader."

Face to face an applicant and an agency representative can resolve any confusion about the declaration form, about its meaning and significance through conversation. By the same token, the agency representative is able to offer assistance and help the applicant fill out the voter registration form. The completed form can then be handed to the agency representative for mailing to the Parish Registrar.

In person transactions are so fundamentally different from remote transactions that a different set of instructions on how to conduct voter registration for agency applications would be required with remote transactions. Different procedures must be developed to make remote transactions work. If the agencies try to make the NVRA agency provisions work for remote transactions, they will be unable to do so and will be in perpetual violation of the statute.

Schedler does not argue that workable procedures for remote transactions cannot be devised. He thinks that they can. The procedures for remote would be different from those Congress put in place for in person transactions. But, that is not the question to be answered in this case. The issue

---

[3] James Fallows, *Tech, Why is Software So Slow?*, The Atlantic, September 2013, p.28.

is whether the NVRA, as presently written, includes remote transactions.

E.  Rewriting a Statute is a Job for the Congress, Not the Courts

The United States' construction of the Act sacrifices the express provisions of the Act to its objectives. Congress adopted a statute in specific, concrete terms. In crafting the Act, Congress undoubtably balanced interests, considered policy, took costs to the states into account and from its deliberations wrote the Act in terms to reflect the Congressional balance of interests and policy. The Act says in plain language that states must adopt procedures for **in person** transactions at designated voter registration agencies. Congress could have provided that states must adopt procedures for remote transactions with designated voter registration agencies, but it did not do so. It made a different choice as reflected in the statute's language. This is a choice by Congress that should not be undone by the courts. The Fifth Circuit is clear on construing statutes as a whole according to the language used by Congress. As in any case of statutory interpretation, this Circuit looks to the plain language of the statute "reading it as a whole and mindful of the linguistic choices made by Congress". *In Re Universal Seismic Associates, Inc.*, 288 F.3d 205, 207 (5th Cir. 2002)

The courts are not the appropriate body to extend NVRA coverage to "remote" transactions no matter how laudable the court's intentions may be, no matter how much the courts think the alteration of the statute might be desirable. Rewriting a statute is a job for Congress, not for the courts. *Gonzales v. Arizona*, 453 F.Supp.2d 997, 1003 (D. Arizona 2006). It is not the function of the courts to reformulate a statute in pursuit of its purpose or in light of changing realties.

Deciding what competing values will or will not be embodied in a statute in order to achieve a societal objective is the essence of legislative action. Congress uses particular language in a statute to reflect the choices that it makes on how to best achieve those objectives. It frustrates legislative

17

intent to assume simplistically that whatever furthers the statute's primary objective must be the law. *Norfolk Southern Railway Co. v. Sorrell*, 549 U.S. 158, 171 (2007); *Rodriguez v. United States,* 480 U.S. 522, 525-526 (1987).

Whether and how to change and amend laws is developed through the legislative process taking into account demographic data, the collective experience of the states, the availability of other methods of registration, input from citizens and organizations, consultation with experts, comparative methods in other democratic countries, and other relevant considerations. Expanding the coverage of the NVRA through judicial action takes the courts pretty deep in the weeds of lawmaking without the benefit of the tools available to and traditionally utilized by the political branches in enacting laws.

Undoubtedly, remote transactions, particularly online, have proliferated since the adoption of the NVRA in 1993, and there may be strong arguments in favor of petitioning Congress to amend the law. Congress is certainly aware of electronic transactions. It has modernized other voting and registration statutes to cover electronic transactions, as for example with military registration and balloting in 52 U.S.C. 20302. But, whether amending the NVRA to cover "remote" transactions is a good idea, Congress has not done so to this point. This does not mean that the courts should take up the cudgel and do Congress' job.

## **CONCLUSION**

For the foregoing reasons, Schedler submits that the Court should grant partial summary judgment, limiting the plaintiff's claim for declaratory and injunctive relief to transactions conducted in person at voter registration agencies designated under Section 7(a)(1-2) of the National Voter Registration Act and dismissing that part of the plaintiff's claims relating to so called "remote

applications" by telephone, on-line, or by mail.

>RESPECTFULLY SUBMITTED,
>
>s/Celia R. Cangelosi
>CELIA R. CANGELOSI
>Louisiana Bar Roll No. 12140
>5551 Corporate Blvd., Suite 101
>Baton Rouge, Louisiana 70808
>Telephone: (225) 231-1453
>Facsimile:  (225) 231-1456
>celiacan@bellsouth.net
>
>
>s/Carey T. Jones
>CAREY T. JONES
>Bar Roll No. 07474
>1234 Del Este Avenue, Suite 803
>P.O. Box 700
>Denham Springs, LA 70727
>Telephone: (225) 664-0077
>Facsimile:   (225) 664-9477
>tjones@tomjoneslaw.com
>
>*Attorneys for Defendant, Tom Schedler, in his Official Capacity as Louisiana Secretary of State*

CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a copy of the "Memorandum in Support of Motion For Partial Summary Judgment by Defendant, J. Thomas Schedler" has been electronically delivered, via the electronic filing system or U.S. Mail, to the following counsel of record:

John J. Gaupp (john.gaupp@usdoj.gov)

Bradley E. Heard (bradley.heard@usdoj.gov)
J. Eric Rich (j.rich@usdoj.gov)
Janie Allison Sitton (jaye.sitton@usdoj.gov)
Meredith Bell (meredith.bell-platts@usdoj.gov)
Patrick Holkins (patrick.holkins@usdoj.gov)

William S. Bryan, III (bryanb@ag.state.la.us)

Harry Joseph Philips, Jr. (skip.philips@taylorporter.com)
Amy Collier Lambert (Amy.Lambert@taylorporter.com)
Katia Desrouleaux (katia.bowman@taylorporter.com)

Stephen R. Russo (srusso@la.gov)
David McCay (david.mccay@la.gov)
Douglas L. Cade (douglas.cade@la.gov)
Kimberly L. Humbles (kim.humbles@la.gov)
Rebecca Claire Clement (rebecca.clement@la.gov)
Brandon Babineaux (brandon.babineaux@la.gov)

Celia Alexander (celia.alexander@la.gov)

Charles L. Dirks, III (charliedirks@gmail.com)

    Baton Rouge, Louisiana, this 25th day of January, 2016.

                                            s/Celia R. Cangelosi
                                            CELIA R. CANGELOSI